(66 South. 382)

No. 20217.

MURPHY et al. v. MURPHY.

(Nov. 4, 1914.)

*(Syllabus by the Court.)*

1. TENANCY IN COMMON ☞15, 20, 30—ADVERSE POSSESSIONS—TAX TITLE.

A purchase of the common property at tax sale by a coheir in possession operates only as a payment of the taxes; and there is no equity in favor of such coheir, where the occupation of the premises was worth more than the annual taxes. As such a tax sale conveys no new title to the purchaser, it cannot serve as the basis of prescription.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 42–52, 60, 61, 95, 96. 98, 99; Dec. Dig. ☞15, 20, 30.]

2. TENANCY IN COMMON ☞29—REIMBURSEMENT FOR IMPROVEMENTS.

In the absence of contract, the coheir in possession of real estate cannot charge his coheir for services as superintendent, or for improvements, except such as are necessary for repairs or the preservation of the property, or for works which have enhanced its value.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 89–92, 94; Dec. Dig. ☞29.]

3. DESCENT AND DISTRIBUTION ☞70—PRESUMPTIVE HEIR—RIGHT TO RENOUNCE INTEREST.

A presumptive heir cannot renounce his interest in property belonging to his living parents.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. § 213; Dec. Dig. ☞70.]

4. DESCENT AND DISTRIBUTION ☞72—HEIRS—RENUNCIATION OF INTEREST—WHAT CONSTITUTES.

A declaration to the notary by an heir that he knew of no other property belonging to the succession cannot be construed as a renunciation of his interest in property situated in another parish.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 221, 222; Dec. Dig. ☞72.]

Appeal from Twenty-Eighth Judicial District Court, Parish of Jefferson; Prentice E. Edrington, Judge.

Action by Mrs. Elizabeth D. Murphy, wife of Arthur Rolfs, and another, against Marcus T. Murphy. From judgment for plaintiffs, defendant appeals. Affirmed.

J. Zach Spearing and W. J. Waguespack, both of New Orleans, for appellant. John E. Fleury, of Gretna, for appellees.

LAND, J. The property in dispute is a tract of some 521 acres of swamp and overflowed land facing Bayou Barataria and Harvey's Canal, in the parish of Jefferson. This tract was acquired by Thomas H. Murphy in the year 1867. Murphy died in

1876, and his wife died in 1877, leaving as their sole heirs Louisiana C. Murphy, Marcus T. Murphy, and Junius Murphy. The last named disappeared in 1897, and has never been heard from. Louisiana Murphy married, and died in 1883, leaving a widow, and two children, the latter now the plaintiffs in this suit. Marcus T. Murphy is the defendant, who claims to own the whole tract by virtue of a purchase at tax sale, of date December 14, 1889, made under an assessment against the estate of T. H. Murphy.

Plaintiffs claim an undivided third interest in the property, and sued to annul the sale on several grounds, and, in the alternative, alleged that the tax purchase made by the defendant and coheir inured to their benefit.

Defendant sets up the tax purchase as a title, and pleaded the prescription of 3, 5, 10, and 20 years. For further answer, the defendant averred that the plaintiffs and their father abandoned said property many years before the tax sale, and not only neglected and refused to pay the taxes on said property, but would not pay any other expenses or charges thereon, and refused to have anything to do with said property. For further answer, defendant averred that ever since said tax sale he has lived and resided on said tract of land, and cultivated a part thereof, and erected works of improvement thereon; and that the plaintiffs, with full knowledge of said facts, have never questioned the defendant's title to the tract, nor objected to defendant's occupancy and improvement of the same.

In a supplemental answer the defendant reconvened, in the alternative, for one-third of $22,179.58, for taxes paid, services rendered, money expended, and improvements made on the premises. The case was tried, and there was judgment in favor of the plaintiffs for an undivided one-third interest in the tract of land, and for $126, less $81.15, for their net one-third of the revenues collected by the defendant.

The tract was sold for the taxes for the years 1880 to 1888 on an assessment in the name of "Est. T. H. Murphy." The tract was sold for $78.95, made up of $51.50 for taxes and interest, for said years, and $27.45 for costs.

The tax deed recites that the purchaser also paid $2.35 for taxes of 1889. The record does not show any tax assessment against the Murphy estate prior to 1888.

Defendant testified that he made shingles on the tract in the year 1887, and had control of the property; that in 1889 he went to see about the taxes, and found there was $500 of taxes against it; and he went to see his brothers and asked them if they wanted to pay the taxes, and they said they would not give 5 cents for the property. Murphy's statement about the amount of taxes was a gross exaggeration, as shown by the recitals of the tax deed; and he could not have seen, at least in the flesh, his brother Louisiana, who died in the year 1883.

The defendant further testified that his brother Louisiana, in 1874, while helping him to build a camp or shack on the tract, said he had no use for the property. Defendant further said that his father paid for the shack, and told Louisiana to help build the camp. In answer to a direct question, the defendant replied that he did not remember positively any conversation with Louisiana in regard to the property after the death of their father in 1876.

Defendant, in the course of his examination, stated that Louisiana became insane in 1876, and subsequently was sent to the Jackson Insane Asylum, where he died in 1883.

The plaintiffs were respectively 12 and 11 years of age at the time of the tax sale in 1889. Defendant admitted that they did not say anything to him about the taxes or the property, but stated that he talked with

their mother on the subject, and told her that there was $500 of taxes due against the property, and afterwards that he had purchased the tract of land at tax sale.

Mrs. Murphy, the mother of the plaintiffs, positively contradicted the testimony of the defendant as to conversations between them on the subject-matter of the taxes and the tax sale. Mrs. Murphy further testified, in substance, that she knew that there was property in Jefferson parish belonging to the estate of the father and mother of the defendant, but that the defendant never spoke to her about this property after the death of her husband; that she did not know the property was put up at tax sale, and did not discover that it was sold until 1911. Mrs. Murphy further testified that she had no conversation about this property with her daughters while they were growing up; that the defendant was in possession of the property and lived on it, and she had all the confidence in the world in him.

The testimony of the plaintiffs negatives any knowledge on their part of the taxes and tax sale in question, or even of their interest in the property, until a recent date.

We pass the conflict of testimony between a daughter of the defendant and the plaintiffs and their mother with the remark that the preponderance of the evidence, seems to sustain the version of the latter as to what passed at a certain spiritual seance.

[4] We agree with our learned brother below that the omission of the widow and tutrix to inventory the property in dispute in the succession of Louisiana Murphy, and a similar omission of Louisiana Murphy, administrator, in the succession of Thomas H. Murphy, in which the defendant figured as special tutor for his brother Junius, were "harmless errors." Said inventories were taken in the parish of Orleans. To have inventoried the overflowed tract in the parish of Jefferson would have required another inventory in that parish. The defendant, one of the heirs of Thomas H. Murphy, and special tutor of another heir, did not suggest that the tract be inventoried. The property was covered with water, and was of small value. It is fair to presume that the defendant and his brother Louisiana, either overlooked the property, or did not have it inventoried, to avoid the expense of such a proceeding. As to the failure of the mother and tutrix of the plaintiffs to have the tract inventoried, suffice it to say that the interest of her minor children in the property could not be divested by her acts of omission or commission.

[3] All of the evidence as to the abandonment of the tract by Louisiana Murphy consists of the testimony of the defendant as to the declarations of his dead brother, made before the death of his father and mother, the owners of the property. A succession not yet opened can neither be accepted nor renounced by the presumptive heir. C. C. art. 978, 1887. Hence any renunciation of his interest in the property that may have been made by Louisiana Murphy before the death of his father or mother was a mere nullity. We may add that testimony as to the admissions or declarations of the dead is the weakest species of evidence, and entitled to little consideration.

The trial judge held that the defendant failed to show, by a preponderance of the evidence, that the plaintiffs or their father ever abandoned the property in dispute, or that the former waited until the land became valuable before asserting their ownership. We approve this finding.

There is no equity in the defense. Defendant resided on the land, and its use for that purpose alone was worth far more than the $2 or $3 of annual taxes assessed against the property. In 1887 the defendant used cypress timber on the premises for the manufacture of shingles, and the exhibit an-

nexed to the answer shows that he also used wood for fuel, charcoal, cross-ties, and crates, and received hundreds of dollars from excursions, for clubhouse rent, docking, trapping and other uses of the premises. Defendant was the sole usufructuary of the tract, and in justice and equity should have paid the taxes out of his own pocket.

[1] It is hornbook law that defendant's purchase of the tract at the sale operated merely as a payment of the taxes. Bossier v. Herwig, 112 La. 539, 36 South. 557; Harris v. Natalbany Lumber Co., 119 La. 978, 44 South. 806; Duson v. Roos, 123 La. 836, 49 South. 590, 131 Am. St. Rep. 375; Interstate Land Co. v. Doyle, 126 La. 707, 52 South. 991; Duvigneaud v. Loquet, 131 La. 568, 59 South. 992; Williams v. Harrell, 132 La. 1, 60 South. 699, and authorities there cited.

[2] The only remaining issue is the reconventional demand of the defendant. The court below properly allowed the defendant credit for all taxes paid by him, and properly disallowed his claim of $23,340 for services as manager, in the absence of evidence as to any contract or agreement on the subject-matter. See Conrad v. Burbank, 25 La. Ann. 112; Sharp v. Zellar, 114 La. 549, 38 South. 449.

The court also properly disallowed all expenditures by defendant which did not enhance the value of the property. The judge below says:

"He [defendant] has not by any positive testimony convinced the court that he had placed any improvements on this property whatever, and his testimony tends to show that these expenditures did not inure to the benefit of the land; it did not enhance its value."

A co-owner is not liable for improvements made by the other proprietor, except such as are necessary for repairs or the preservation of the property. Toler v. Bunch, 34 La. Ann. 997.

In the exhibit annexed to his answer defendant claims credit for the value of four clubhouses stated to belong to other parties, and also claims $710 for "improvements in buildings." It appears from defendant's own testimony that this last item refers to a building erected on the premises by Mr. N. D. Harvey under a lease from defendant.

The testimony of Messrs. H. H. Harvey and Leo. A. Marrero, owners of contiguous lands of the same character, shows that the tract in dispute is marshland subject to overflow, and that the alleged work of the defendant on the premises has not enhanced the value of the tract.

These witnesses further testified that the great increase in value of the tract in dispute and of the contiguous marshlands owned by them is due to natural causes, operating throughout the state. The prescription pleaded has no application to this case. Alexander v. Light, 112 La. 925, 36 South. 506.

We are indebted to our learned brother below for assistance rendered in the consideration of this appeal by his careful review of the evidence, and his citation of authorities applicable to the facts of the case.

Judgment affirmed.