HIGGINS, Justice.
 

 Mrs. Henrietta S. Carbajal sued for a partition by licitation of certain real estate and other assets.
 

 The defendants, her sisters, Mrs. Marie S. Manzella and Mrs. Doretta S. Bickmann, in their answer, admitted the co-ownership in indivisión in the proportion of an undivided one-third each of the three heirs and that the property was not divisible in kind, but they claimed that Mrs. Manzella should be paid $75,000, and Mrs. Bickmann, $20,000, under written agreements dated February 9, 1926, and March 26, 1926, between the parties, out of the remaining mass of the succession property to be sold. They also opposed certain items in Mrs. Carbajal’s account of her administration of the common property.
 

 There was judgment, ordering a partition but rejecting both claims, and the account was amended in certain respects.
 

 The property was sold at public auction during the month of May, 1938, bringing the total sum of $176,375, which was reduced to the sum of approximately $100,-000, due to deductions for taxes, paving, interest, auctioneer’s charges, etc., and this balance was placed in the registry of the court.
 

 The defendants appealed and the plaintiff answered the appeal, averring that the trial judge had erroneously charged her with certain items for which she was not responsible and refused to allow her other items which she was entitled to in the accounting.
 

 Gustav Seeger married Henrietta Meisner, by whom he had issue of three daughters, the plaintiff and defendants herein. He died intestate on December 27, 1922, leaving community property, and his widow and children were sent in possession of his estate in the proportions of an undivided one-half to the mother and one-sixth each to the daughters.
 

 When Mrs. Seeger passed away on March 18, 1925, she left a will in which she provided for special legacies, consist-ting of two separate pieces of real estate, in favor of her two daughters, Mrs. Manzella and Mrs. Bickmann, respectively, as extra portions, free from collation. Mrs. Carbajal questioned, in court, the validity of these bequests on the grounds that the testatrix was not the sole owner of the property, which was indivisible in kind, and that they were uncertain, because the amounts to pay for the other co-heir’s interest in these properties were not specified or fixed in the will.
 

 In order to clarify the matter and settle all questions between them, the parties entered into a written contract on February 9, 1926, in which they agreed that they would take the necessary legal steps to have themselves declared as the sole and only heirs of the decedent, subject to the
 
 *63
 
 right of the legatees to have the validity ■of their alleged legacies determined by the court; that all the property be sold .at public auction, without limit or reserve to the highest bidder or bidders; and that so far as the properties covered by the disputed legacies were concerned, the ■amounts bid therefor, together with one-third over and above the same, would be placed in the registry of the court to •await the final decision of the Supreme Court on the pending appeal.
 

 On March 26, 1926, the parties supplemented the above agreement by providing that, in consideration of the notarial renunciation by Mrs. Manzella and Mrs. Bickmann of their claims to the special legacies, Mrs. Manzella would be paid the sum of $75,000 and Mrs. Bickmann the sum of $20,000, “out of the proceeds of the sale of all properties of this estate' * * it being specifically understood and agreed that the two amounts totalling the sum of $95,000.00 shall be paid out of the mass of this estate.”
 

 On April 6, 1926, the property was sold at public sale and brought approximately $2,500,000, the Orange Grove or Gentilly ’Tract bringing about $1,500,000 and was adjudicated to C. A. Tessier, Jr. Mrs. Carbajal and Mrs. Manzella also bid in certain pieces of the property. Mr. Tessier refused to comply with his bid and Mrs. Carbajal instituted a suit for specific performance against him and her two sisters joined the defendant in resisting her demand. This Court decided the case in favor of Mr. Tessier. Carbajal v. Tessier, 163 La. 894, 113 So. 138.
 

 In the meantime Mrs. Manzella and Mrs. Bickmann had sold their two-thirds interest in the Gentilly Tract to Mr. Tessier’s holding company for a sum in excess of $900,000. Later, Mrs. Carbajal, finding herself with a strange 'co-owner in the Gentilly property, sold her interest to the same holding company for the sum of $250,000.
 

 Mrs. Carbajal was then sued by her two sisters for the purchase price of certain adjudications of properties to her and to cancel the notarial acts confirming them. We held the demands to be inconsistent and dismissed the suit. Bickmann et al. v. Carbajal, 166 La. 618, 117 So. 738.
 

 Thereafter, Mrs. Manzella and Mrs. Bickmann sued Mrs. Carbajal for specific performance of the conventional agreements of the parties contained in the documents of February 9, 1926, and March 26, 1926, to partition the estates of their mother and father, including the payment of the sums of $75,000 to Mrs. Manzella and $20,000 to Mrs. Bickmann, and the payment by Mrs. Carbajal of the purchase price of about $763,000 for the several parcels of property adjudicated to her at the auction sale of the entire estate in 1926. We rejected these demands and dismissed the suit, holding that the plaintiffs had breached the contracts which they sought to enforce by alienating their two-thirds interest in the Gentilly Tract to Mr. Tessier’s Company, thereby making it impossible for Mrs. Carbajal to carry out her part of the agreement. Seeger v. Seeger, 169 La. 611, 125 So. 732.
 

 
 *65
 
 Mrs. Carbajal returned the several pieces of property which had been adjudicated to her to the estate and then instituted the present suit to secure a partition by licitation of the remaining property held in indivisión by the three sisters and filed her account of the administration thereof. These pieces of property were sold at public sale during May, 1938, for $176,000, and, in passing, we note that these same assets brought over three-fourths of a million dollars in 1926.
 

 Liability for the claims of $75,000 and $20,000, respectively, is denied by Mrs. Carbajal on the grounds: (a) That this matter is res adjudicata, the same demands having been rejected by this Court in affirming the ■ judgment of the lower court in the case of Seeger v. Seeger, 169 La. 611, 125 So. 732; (b) That these sums were payable only out of the mass of the whole estate, which the claimants destroyed by the deliberate breach of their contracts dated February 9, 1926 and March 26, 1926; and (c) That the obligation to discharge the alleged legacies no longer exists as the same was novated by the obligation to make the money payments.
 

 The prayer of Mrs. Manzella’s and Mrs. Bickmann’s pleadings in the previous litigation between the parties, entitled Seeger v. Seeger, supra, unquestionably shows that they were seeking the enforcement of the agreements contained in the documents dated February 9 and March 26, 1926, and particularly the payments of $75,000 and $20,000, respectively, out of the mass of the estate. This fact is fur-ther shown by Mrs. Manzella’s request that her separate suit and demand for $75,000, filed in Division “E” of the Civil District Court, be dismissed, because the same matter was at issue in Mrs. • Bickmann’s suit against Mrs. Carbajal pending in Division “A” of the same court through her (Mrs. Manzella’s) reconventional demand. The judge of Division “A” of the Civil District Court rejected the demands of Mrs. Manzella and Mrs. Bickmann and they appealed. We affirmed that judgment. Seeger v. Seeger, 169 La. 611, 125 So. 732. One of the objects of that suit was the payment of the sums of $75,000 and $20,000, respectively, to these parties and was predicated upon the contracts of'February 9 and March’26, 1926. These are the identical demands that are made here and which we previously held were properly denied. The status of the parties or the facts of the case have not changed. The claimants have neither attempted to have the Gentilly Tract returned to the estate, in order that it might be sold in accordance with the agreements, nor have they offered to place in the mass of the estate the price they received for their two-thirds interest therein. The Court is again confronted with the same proposition presented in the previous litigation between these parties where they are asking for the enforcement of the contracts against Mrs. Carbajal, when the mass of the estate (out of'which the agreements specifically provide they shall be paid) has been destroyed through their own violation of the agreements. The plea of res adjudicata
 
 *67
 
 is well founded and sustained. Granger v. Singleton, 32 La.Ann. 898, Sewell v. Scott, 35 La.Ann. 553, and Greenwood Planting & Mfg. Co. v. Whitney Central Trust & Savings Bank, 146 La. 567, 83 So. 832. See, also, Rauschkolb v. Di Matteo, 190 La. 7, 181 So. 555.
 

 It is strenuously argued that, if Mrs. Bickmann and Mrs. Manzella are denied recovery of these amounts claimed under their contracts with Mrs. Carbajal, then, they are entitled to litigate the question of the validity of the legacies, since this issue has never been passed upon by this Court.
 

 These two legatees, in consideration of Mrs. Carbajal foregoing her right to contest the legality of the legacies on the grounds set forth in her pleadings, agreed to settle the controversy by accepting $75,000 and $20,000, respectively, in cash, from “the proceeds of the sale of all of the properties in this estate.” This was a legal and binding agreement supported by a valid consideration. Mrs. Carbajal, at all times, was ready and willing to carry out the contracts, but the actions of the legatees in destroying ’ the mass of the succession made this impossible. The legatees are seeking to be placed in their original status, so that they might claim under the will, but they have not attempted or made any effort to restore Mrs. Carbajal to her original position, which, of course, is’ impossible. Mrs. Carbajal would be placed at a serious disadvantage as will readily appear from the fact that, if we were to grant the claimants’ requests under the contracts, they would take $95,000 of the remaining $100,000, or baíance of the mass of the estate, instead of taking the $95,000 from the total mass of the estate. Simple subtraction would show that this would leave Mrs. Carbajal only $5,-000. Furthermore, the two pieces of property covered by the special legacies having been sold to third persons with the consent of the legatees, it is also impossible to bring them back into the estate. In fact, their interest in the Gentilly land covered by the special legacy in favor of Mrs. Bickmann was sold by her and Mrs. Manzella at private sale to Mr. Tessier’s company in violation of the agreement that the property would be sold at public auction.
 

 The legatees intended and understood that by their contracts of February 9 and March 26, 1926, the obligation under the will covering the legacies was novated. They renounced the legacies in furtherance of the contracts and then sued on the contracts, but lost. They cannot now revive the old obligation, which was extinguished by novation, because by their own acts in breach of the agreements their claims for the money due under the contracts were lost. R.C.C., Articles 2130 and 2185; Gardner & Co. v. Levasseur & Co., 28 La.Ann. 679; Cammack v. Griffin, 2 La.Ann. 175; Murdock v. Coleman, 1 La.Ann. 410; Chapman v. Hardesty, 10 Rob. 34; Laurent (1893), Vol. 18, 349, No. 322; Cox v. Williams, 7 Mart.,N.S., 301, 305, and Pothier’s “Obligations” (2d American Ed., by Evans, 1839), Vol. 1, 303. We conclude that the trial judge properly disallowed these claims.
 

 
 *69
 
 The claim by the sisters against Mrs. Carbajal for rent of the vacant lot adjacent to the Marberc Hotel was rejected by our learned brother below. The record shows that Mrs. Carbajal became the adjudicatee of this piece of land with the buildings thereon and the adjudication was confirmed to her by notarial act. The sale was a simulation, because the purchase price had never been paid, the matter being held in abeyance on account of the refusal of Tessier to take title to the Gentilly Tract, which he purchased at auction. Mrs. Carbajal had the buildings inspected by the City Architect’s Office and because they were considered hazardous, they were demolished. Mr. and Mrs. Carbajal then attempted to rent the vacant lot as an automobile parking place, but were unsuccessful. The B. G. Carbajal Company, Inc., of which Mr. and Mrs. Carbajal were officers, owned the adjacent property known as the Marberc Hotel. The Company leased the Marberc Hotel to Robert L. Cherry, who conducted the hotel business therein for himself. Mr. Cherry made a contract with the Blaise Auto Parking Company to handle the parking of the automobiles of the guests of the hotel. The B. G. Carbajal Company, Inc., put a fence around the lot in question and Mrs. Carbajal succeeded in renting it to a man who attempted to operate an automobile parking place, but promptly failed. Thereafter, she was unsuccessful in her efforts to rent the property again, one of the reasons being that the lot would only accommodate about fifteen automobiles and, therefore, it was too small for that type of business. It appears that some of the guests of the hotel, not being authorized by the hotel manager, parked their cars in this vacant lot, without permission from Mr. and Mrs. Carbajal or the Carbajal Company. No effort was made to show that Mrs. Carbajal could have rented the property to a tenant or that she or her husband authorized Mr. Cherry to use this lot. Under these facts, surely Mrs. Carbajal was not liable for rent.
 

 The trial judge charged Mrs. Carbajal with the sum of $461.63, representing premiums paid on fire insurance policies issued in her name on the various buildings adjudicated to her. Originally, the judge had allowed her a credit for this amount.
 

 During the time that Mrs. Carbajal was in possession of the properties, which she administered under the adjudications and the simulated sales and which properties, this Court held, she had the legal right to return to the estate on account of the breach of the contracts, she was the negotiorum gestor and it was her duty to keep the buildings insured against loss by fire. She had an insurable interest and even though the policies were issued in her name, they • were also for the benefit of her co-owners, because the sales had never been completed, the purchase prices not having been paid. The policies were in effect during the period of time that Mrs. Bickmann and Mrs. Manzella are claiming the rents realized therefrom wére due the three sisters as co-owners of the
 
 *71
 
 property. These policies of insurance did not cover'merely Mrs. Carbajal’s one-third interest in the properties, but covered the whole of the properties. The insurance premiums paid by Mrs. Carbajal constituted, therefore, a proper charge against the mass. It is clear that, in the event the buildings had' been destroyed by fire, Mrs. Carbajal would have been obligated to rebuild them out of the insurance proceeds, or to deliver the insurance money into the administration account for the benefit of the three sisters equally. Moreira v. Schwan, 113 La. 643, 37 So. 542; Sharp v. Zeller, 114 La. 549, 38 So. 449; Cyclopedia of Insurance Law, Couch, Volume 2, page 1056, Sections 360 and 410; The Law of Insurance, Joyce, 2d Edition, Volume 2, page 2036, Sections 946, 944 and 615, and Elliot on Insurance, Sections 257 and 243. The judgment below in rejecting this item is erroneous and will be annulled.
 

 The district judge properly allowed the sum of $188.37 against Mrs. Carbajal in connection with the erroneous computation of an income tax on the revenues from the jointly owned properties.
 

 In her accounting, Mrs. Carbajal charged a commission of 10% on the revenues- from the buildings for the services necessity imposed on her since 1926 in administering these properties. She gave her best attention and judgment in the management of this vast estate, which brought, at auction in 1926, approximately $763,000, and from which she collected the sum of $70,000 as rent. She had to attend to the repairs, tax assessments, payment of taxes and paving, insurance policies and premiums and collection of the rents. She paid her bookkeeper and her rent collectors and agents. No charge was made for the supervision of the repairs or any of the work entailed in the administration of these extensive properties during the period from 1926 to 1931. She is asking an administration or rent collection fee which amounts to 3%% for each owner, including all outlays for bookkeeping clerk, rent collectors and an auditor. She has faithfully accounted to the court for all of the revenues, as shown by the statement of the auditors appointed by the court.
 

 Mrs. Carbajal did not take possession of these properties with any idea of administering them for the joint account'of the co-owners. She took possession of them under the adjudications, which were confirmed in the notarial acts, and was forced to maintain her possession and administration of them because of the litigation between herself and her sisters, and especially their suit against her for specific performance. When these sales were finally dissolved as simulations, due to no fault of Mrs. Carbajal’s, her administration of the properties was, therefore, as a negotiorum gestor. Since the co-owners are claiming two-thirds of the rents and revenues of the properties during that entire period of time, we know of no good reason why they should get the benefit of her services for collecting rents through her agents and keeping the records thereof, without in any way reimbursing her,
 
 *73
 
 especially, since she never enjoyed the use or .benefits of the properties other than her one-third share in the net revenue produced by them. While it is true Mrs. Carbajal had no agreement with her sisters by which she was to receive a commission, their actions unquestionably made it necessary for her to continue in possession of the properties and to administer them as a prudent administrator for 'their joint account. The amount charged is not a commission for the supervision of the properties but an administration or rent collection fee covering her services and the expenses she was required to incur' in connection therewith.
 

 It appears that when Mrs. Manzella collected the rents of the common property during her administration as executrix of her mother’s estate, she charged a commission not only on the rents and revenues on her mother’s one-half interest in the properties, which she was administering officially as executrix, but also on that part of the revenues from the properties, representing the one-half interest therein they inherited from their father. We conclude that this charge should be allowed. R.C.C. art. 21.
 

 Counsel for Mrs. Bickmann has referred us to the case of Conrad v. Burbank, 25 La.Ann. 112. The facts in that case are in no way comparable to the ones in the instant case and the Court does not cite any authority or give any reason for rejecting the claim for commission.
 

 The above authority was- followed by the Court in Sharp v. Zeller, 114 La. 549, 38 So. 449, but, again, the facts in that case were different from those here and the Court pointed out that the plaintiff had voluntarily taken charge of the common property and rendered his services and had enjoyed the use of the rents therefrom.
 

 In the case of Murphy v. Murphy, 136 La. 17, 66 So. 382, the Court disallowed a co-owner’s claim for $23,340 for services in managing the property owned in indivisión, citing both of the foregoing authorities. But, in that case, the claimant had voluntarily taken possession of and administered the common property for his own benefit without any return or advantages to his co-owners.
 

 Mrs. Bickmann and Mrs. Manzella contend that Mrs. Carbajal should be charged with the sum of $3,318.88, representing interest and penalties paid on delinquent taxes and paving liens assessed against the properties. They argue that Mrs. Carbajal had on hand, at the maturity dates of the taxes and paving claims, sufficient funds - with which to pay them, and that it was through her neglect that the penalties and interest charges accrued. No effort is made by counsel in his brief in connection with the voluminous records and involved accounts and the auditor’s reports to show that the funds were available from the rents and revenues of the properties at the .time these debts became exigible. From our review of these records, it appears to us that Mrs. Carbajal did not have on hand at the proper time enough money to pay them. It must be borne in mind that Mrs. Carbajal was
 
 *75
 
 treating these properties as her own and exercising her judgment in administering them for what she determined to be her best interest. It would, therefore, have been to her obvious advantage, if she had sufficient money, to pay these items promptly. The record shows that most of the buildings were small homes, some of which were rented to people of the colored race; and that there were delinquencies in rent payments and, after the financial crash in 1929, the rental values of the properties were considerably reduced and there were also vacancies. We are in accord with the opinion of our learned brother below, on the original hearing, that Mrs. Carbajal should not be held liable for this amount, because it appears that she did not have sufficient funds to promptly pay these debts. This charge against Mrs. Carbajal should, therefore, be rejected.
 

 As to the claims for interest against Mrs. Manzella, it appears that she borrowed from the general fund while in charge of the Notary, the sum of $14,000, and signed a note on October 18, 1926, for that amount, agreeing to pay 1% interest per annum thereon until paid. She is clearly liable for the interest charged her and it should have been allowed.
 

 Mrs. Manzella also borrowed from the Notary from the common fund on May 12, 1926, the sum of $3,166, without any agreement as to payment of interest. On April 21, 1925, she purchased certain real and movable properties at public sale from- the estate for the sum of $11,102.50, which sum she has never paid to the estate, although she has retained the properties and enjoyed the use, benefits or revenues therefrom. On June 4, 1926, she purchased property from the estate for the sum of $19,600, but did not pay the purchase price, -although she retained the property and enjoyed the use, benefits or revenues therefrom. It is our opinion, on these several items where no interest was stipulated, that she is liable for the legal rate of interest of 5% per annum from the date that the indebtedness was incurred until it is paid. Therefore, these claims for interest are allowed.
 

 The claim for interest on the amount of rents that she collected from the properties during her administration is disallowed, because it was not shown that she was ever requested to place this money in the registry of the court or to invest it and failed to do so, and because it was expected that she would have these funds ready and available at all times for the purpose of rendering an accounting to the co-owners and to pay for repairs. It does not appear that she ever refused to promptly render the account or to pay the funds less the expenses to the co-owners in their correct proportions.
 

 For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the lower court is amended by allowing Mrs. Henrietta S. Carbajal credits for the sum of $3,318.88, representing interest and penalties on delinquent taxes and paving claims; the sum of $461.63, representing the amount paid for fire insurance premiums on the buildings; and the sum of $6,875.57 for compensation for services rendered in the collection of the rents and
 
 *77
 
 revenues of the properties and expenses incidental to the collection thereof during the entire time they were under Mrs. Carbajal’s administration.
 

 It is further ordered, adjudged and decreed that the judgment of the lower court is further amended by allowing 1% per annum interest on $14,000 from October 18, 1926, until paid; and 5% per annum interest on $3,166.00 from May 12, 1926, until paid; and
 
 5%
 
 per annum interest on $19,600.00 from June 4, 1926, until paid; and 5% interest per annum on $11,-102.50 from April 21, 1925, until paid, against Mrs. Marie S. Manzella.
 

 As thus amended, the judgment is affirmed; the costs of both courts to be charged against the funds representing the balance of the mass.
 

 O’NIELL, C. J., dissents from that part of the decree which allows Mrs. Carbajal $6,875.57, and . otherwise concurs in the decree.