127 So.2d 341 (1961)
ATLANTIC REFINING COMPANY, Plaintiff-Appellee,
v.
Ola GOLSON et al., Defendants-Appellee-Appellants.
No. 9406.
Court of Appeal of Louisiana, Second Circuit.
February 2, 1961.
Rehearing Denied March 10, 1961.
Certiorari Denied April 24, 1961.
*342 Shotwell & Brown, through Burt W. Sperry, Monroe, for appellants.
Pipes & Pipes, Monroe, for appellee Ola Golson.
Tucker, Bronson & Martin, Shreveport, for appellee Atlantic Refining Co.
Before HARDY, AYRES and BOLIN, JJ.
BOLIN, Judge.
This is a concursus proceeding instituted on April 22, 1957, by the Atlantic Refining Company as the operator of certain pooled and unitized properties from which oil and gas was being produced, and which included the North one-half (½) of the Northeast one-quarter (¼) of Section 25, Township 17 North, Range 1 East, Quachita Parish, Louisiana. The disputed interest involved herein represents an undivided one-half interest in the minerals under the said eighty acre tract, or a one-sixteenth of the royalties. The amount deposited in the proceedings was $700.07 which was the payment for the accruing royalties for the months of December, 1956, through March 1957.
The concursus petition was answered by two groups who may be generally referred to as the Golson heirs and the Jackson heirs. From a judgment recognizing the owner-ship of the one-sixteenth royalty interest in the Golson heirs, the Jackson heirs have perfected this appeal.
The facts are not in serious dispute, and may be briefly stated as follows: The entire eighty acre tract was originally owned by the ancestors of the Jackson heirs, and had been conveyed and reconveyed at various times to Mr. D. P. Golson, but the ownership of same prior to February, 1920, has no particular bearing on this case. On *343 February 19, 1920, D. P. Golson owned an undivided one-half interest therein and the remaining undivided one-half interest was owned in equal proportions by Orell Jackson and Silia Jackson. For the year 1921 the property was assessed to D. P. Golson as the owner of an undivided one-half, and Orell Jackson and Silia Jackson as owning the remaining interest. The taxes for the year 1921 were $15.53. These taxes were not paid and the property was purchased on September 20, 1922, at a tax sale by D. P. Golson for the sum of $23.12, which represented the unpaid taxes and cost. For the years prior to the 1922 tax sale the address of the Jacksons had been separately given, but beginning with the 1921 notice the same were addressed to Mr. D. P. Golson, pursuant to his instructions. Thereafter, all such notices were mailed to Mr. Golson and he paid the taxes on the entire interests, and continued in possession as the owner thereof. The record shows that tax notices were never mailed to the Jacksons for any of their proportionate share of the taxes subsequent to those due for 1920.
In answer to the concursus proceedings, the Golson heirs predicated their title on the undivided interest of the Jackson heirs which was purchased by D. P. Golson at a tax sale dated September 20, 1922. They further interposed special pleas of prescription of ten and thirty years acquirendi causa and the peremption of five years as provided by Louisiana Constitution, Article 10, Section 11, L.S.A. These defendants also filed a plea of estoppel against the Jackson heirs; the basis for such plea being that the Jacksons were estopped from asserting any title to the property sold at the tax sale in 1922; that any such rights they might have possessed had been lost because of the unreasonable length of time which had expired since said sale; that because of the passage of such unreasonable length of time, coupled with their own inactivity and laches, they were thereby estopped from asserting their title in the concursus proceedings.
The Jackson defendants asserted a claim to their undivided one-half interest in the property which was sold to D. P. Golson at the 1922 tax sale. In this connection, the evidence showed that for the year in question D. P. Golson had two separate assessments made to him, being assessments Nos. 225 and 226. The assessment covering the Jackson property was No. 225 and was for the sum of $15.53, and was purchased for the unpaid taxes by Mr. Golson. Assessment No. 226 was for approximately one thousand fifty acres of land owned by Mr. Golson, and the taxes on same were paid by Mr. Golson. The record further reflected that the taxes were thereafter paid by the Golsons on the disputed tract of land, and that no notices were mailed to the Jackson heirs. The Jackson heirs, therefore, contend that the purchase by Mr. Golson of their undivided interest in the property at a tax sale did not vest any additional title in Golson, but was merely a payment by him of the taxes for the Jackson heirs with the right reserved to them to re-invest title in themselves by the repayment of all such past due taxes.
The most important issue presented to us for decision is whether or not the purchase by Mr. Golson of the undivided interest of the Jackson heirs by a tax deed in 1922 vested him with title to their interest. It is now the well settled law of our state that the adjudication to one of several joint owners of property adjudicated at a tax sale does not divest the other co-owners of their interest in the property. The tax sale only operates as a payment of the taxes for the joint benefit of all of the co-owners, with the right on the part of the adjudicatee to be reimbursed the amount he paid. Bossier v. Herwig et al., 1904, 112 La. 539, 36 So. 557; Murphy v. Murphy, 1914, 136 La. 17, 66 So. 382. However, it has also been held that the right of the co-owners to become reinvested with title upon reimbursing the other co-owners of his share of the taxes is a right that must be exercised *344 within a reasonable time, and if not exercised within such reasonable time, and third parties acquire an interest in the property on the strength of the recorded tax title without any knowledge of the equitable interest of the co-owners to become reinvested in his title, or reimbursing his co-owner for the taxes paid by him, such third person will be protected, and can plead the peremption provided for in Article 10, Section 11, of the Constitution against the attack on the tax sale. Cooper v. Edwards, 1922, 152 La. 23, 92 So. 721.
Furthermore on the question of reasonable time, we quote the following from Doiron et al. v. Lock, Moore & Co., Ltd. et al., 1928, 165 La. 57, 115 So. 366, at page 369:
"There is no statutory law prohibiting the purchase of an undivided interest in land by a co-owner at tax sale; but if he does purchase, equity holds that the tax deed inures to the benefit of his co-owners, at their option."
In all of these cases granting the co-owner the right to reacquire his property, it has been repeatedly held that same must be done within a reasonable length of time. What is a reasonable length of time must be governed by the particular circumstances of each case. For example, in Dorion v. Lock, Moore & Co., supra, it was held that twenty years was an unreasonable length of time, where the former co-owners had full knowledge of the facts surrounding the loss of the property, and took no action until same increased in value. In the case of Bridges et al. v. Tervino et al., La.App. 1 Cir., 1953, 64 So.2d 528, rehearing denied, it was held that where the parties waited more than twenty years, and during all of said time the original tax debtors had full knowledge of the ownership of the property and had been requested to redeem same on several occasions, that they had waited an unreasonable length of time.
Without citing all of the cases touching upon the question of whether or not the tax debtors had waited an unreasonable length of time before offering to redeem the property from the tax purchaser, we can say that in every case the decision was predicated upon the equitable principle of estoppel. In such cases the purchaser at the tax sale does not then acquire a valid title, but the tax debtor merely loses his right because his own laches and inactivity has. lulled the purchaser into believing he has acquired title. In such cases the purchaser acquired title because the former owner was estopped to assert any right in himself. For this reason all of the cases on this question predicate their holdings on equitable principles.
In the instant case, the Golson heirs cannot predicate their title to the undivided interest of the property which was co-owned by the Jackson heirs by the tax sale alone, and the only question is whether the special plea of estoppel should be sustained against the Jackson heirs. On this issue the district judge concluded that the Jackson heirs had waited an unreasonable length of time to reclaim their land. This conclusion was reached principally upon his finding that they had signed a contract with one John Cooper in 1935 for the purpose of recovering their interest in the property. They had also signed a similar contract in 1951 with L. C. Gerhardt. There was also testimony to the effect that the Jacksons generally knew that they had been divested of the title to this property. Based upon these facts, the district judge was of the opinion that the plea of estoppel was good. In other words, it was his opinion that the heirs should have done something toward redeeming the property because they had at least constructive knowledge that there was a defect in the title. The first such knowledge being in 1935, when they were contacted by Cooper, and the second time in 1951, when contacted by Gerhardt. He felt that under the circumstances the Jacksons had waited an unreasonable length of time.
*345 The Jackson heirs, on the other hand, contend that they never knew the exact status of their title; it being seemingly conceded that there was some defect. The record certainly does not establish to our satisfaction that the Jackson heirs had full knowledge of the circumstances surrounding the acquisition of their title by the tax sale to Mr. Golson. In this connection, we point out that the Jacksons were rather illiterate Negroes, while Mr. Golson was a comparatively well-to-do farmer and land owner.
As the right of the Jackson heirs to re-acquire their property is based entirely upon the equitable plea of estoppel as filed by the Golsons, and the alleged laches, we deem it appropriate to more fully discuss the jurisprudence on this question. In the case of Harvey v. Richard, 1942, et al., 200 La. 97, 7 So.2d 674, 677, rehearing denied. Chief Justice Fournet had this to say about the plea of estoppel:
"The cases holding that estoppels are not favored by our courts are legion in our jurisprudence. Whenever estoppel is pleaded as an element of a cause of action, it must be pleaded specifically, the burden of proving the facts upon which the estoppel is founded, as well as the affirmative showing that he was misled by the acts and forced to act to his prejudice, resting upon the party invoking the doctrine.

"* * * However, as was pointed out in the case of Parker v. Ohio Oil Co., 191 La. 896, 186 So. 604, quoting the following excerpts from Ruling Case Law, Corpus Juris, and Cyc., `Mere silence will not work an estoppel. There must be some other element connected with the transaction and the silence to prevent a person from asserting his rights or claim. * * * But to effect an estoppel by silence it must also appear that the person had a full knowledge of the facts and of his rights, that he had an intent to mislead, or at least a willingness that others should be deceived, and that the other party was misled by his attitude." (Emphasis ours.)
The rule has also been correctly stated in 19 Am.Jur. Sec. 498, page 344 as follows:
"The adjudicated cases `proceed on the assumption that the party to whom laches is imputed has knowledge of his rights, and an ample opportunity to establish them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless, or have been abandoned; and that, because of the change in condition of relations during this period of delay, it would be an injustice to the latter to permit him now to assert them.'
"Responsibility for the legal situation in which the parties are placed rightly rests upon the one who is shown to have been in the better position to prevent it from arising; and by proof that the complainant knew of the defendant's conduct and yet did nothing to prevent the development of the predicament or dilemma, responsibility is fixed on him."
In the case of LaBarre et al. v. Rateau et al., 1946, 210 La. 34, 26 So.2d 279, 285, the court was considering the application of the doctrine of laches as it applied to the plea of estoppel and Justice Hamiter, as organ of the court, had this to say:
"The doctrine of laches, equitable in character and fully discussed in 30 C.J.S. verbo Equity, § 112 et seq., `is based on the injustice that might result from the enforcement of long neglected rights, the difficulty, if not the impossibility, of ascertaining the truth of the matters in controversy and doing justice between the parties, and on grounds of public policy, its aim being the discouragement, for the peace and repose of society, of stale and antiquated demands.' 30 C.J.S. *346 Equity, § 113. What constitutes laches is to be determined in the light of the circumstances of the particular case. The doctrine's application is controlled by equitable considerations; it cannot be invoked to defeat justice; it will be applied only where the enforcement of the right asserted would work injustice. 30 C.J.S., Equity, § 115. While delay in enforcing a right is an element of laches, such delay does not of itself constitute laches. The defeating of a claim by lapse of time alone comes within the province of prescription or limitations. 30 C.J.S., Equity §§ 112 and 116a." (Emphasis ours.)
From our search of the jurisprudence, we have concluded that the co-owners cannot acquire a valid title to the remaining interest by means of a tax sale coupled with the mere passage of time, no matter what the duration thereof may be; that such co-owners can only be deprived of their title to such property under the equitable principle of laches and estoppel. In order for the co-owner to be estopped from reacquiring his property it is necessary for the one interposing such plea to not only show knowledge that something was wrong with the title, but knowledge of all the material facts surrounding such defect. In other words, a person could hardly be estopped from asserting title to his property unless it had been affirmatively shown that he knew exactly what was necessary for him to do in order to perfect such title.
As the above pronouncements relate to the instant case, the record does not satisfy us that the Jackson heirs had knowledge of what it was necessary for them to do in order to reacquire their property. We feel that under the plea of estoppel, it was incumbent upon the Golson heirs to show the Jacksons had knowledge not only of a defect in the title, but that their interest had been acquired by Golson at a tax sale. It was also incumbent upon the Golsons to show that they had made a reasonable effort to inform the co-owners of their purchase at the tax sale. The plea of estoppel being an equitable one, it is necessary that the one interposing same show his own good faith and diligence.
The record in this case does not convince us that the Golsons have borne the burden of proof as required of them; and that because the Jackson heirs have not been shown to have had knowledge of how to reacquire their property, they could not be said to be guilty of laches and, thereby deprived of their rights to reacquire same.
The pleas of prescription and peremption as filed by the Golson heirs have no merit. It has repeatedly been held that a co-owner purchasing at a tax sale acquires no title and, therefore, such tax sale cannot operate as a basis of either a plea of pre-scription or peremption. It certainly could not be sufficient to form the basis of a plea of prescription of ten years acquirendi causa, because such a plea is predicated on a good paper title. There could likewise be no title acquired by the possession of thirty years because the tax purchaser is obviously not possessing as owner under the circumstances. See Robertson v. Grigsby, La.App. 2 Cir., 1949, 41 So.2d 860, rehearing denied, and cases cited therein.
The Golson heirs also have raised the point that the Jackson heirs should not be successful in reacquiring their former interest in the property for the reason that no tender has been made for the repayment to the tax purchaser of the amount expended by him for past taxes, nor has there been any formal offer by him to redeem same. In this connection the record shows that the Golson heirs had the use of all the property from the time of its acquisition; that during this time revenues were derived from same from the sale of pulpwood, rent, etc., and that such revenues far exceeded the amount expended by them in the payment of taxes. This matter being exclusively one in equity, we deem it inequitable to require the *347 Jackson heirs to make any formal tender or offer or reimbursement to the Golson heirs for the unpaid taxes in view of the positive testimony that much more revenue was derived from this property than was required to pay the taxes. As a matter of fact, the Golsons should have enough left over to pay the taxes for many more years to come. See Robertson v. Grigsby, supra.
It seems to be conceded by all of the parties as to the particular undivided interest owned by the Jackson heirs in the event it is held that title has been reinvested in them. For the reasons stated previously herein, it is our opinion that such title should be reinvested in the said Jackson heirs, and the judgment of the district court insofar as it decreed otherwise, is hereby reversed and it is accordingly
Ordered, Adjudged and Decreed that Orell Jackson Burns, James Russell Smith, Dative Tutor for minor Clarence Smith, and Clarence Smith individually, John D. Crump administrator of the estate of his minor children Mary Anna Crump, Jolaine Crump and Alese Crump, and said minors individually, L. C. Gerhardt and Chevis Sherrouse, Jr., be and they are hereby recognized as owners of one-half interest in and to the North one-half (½) of the Northeast one-quarter (¼) of Section 25, Township 17 North, Range 1 East, Quanchita Parish, Louisiana, and entitled to the funds in the registry of the Court, being income from royalties due from the production of minerals from an undivided one-half interest in and to said described property, and they are also entitled to one-sixteenth of all future royalties derived from the oil and gas leases on the above described land, and that the claims of Ola Golson, John R. Golson, Fred K. Golson, Almer D. Golson, Tom J. Golson, Blanche G. Nettles, Chevis W. Golson, Davis Eugene Springfield, Lois Golson Williams, Hazel Golson Stewart and Nell G. Spurlock for the whole of the property be rejected.
It Is Further Ordered, Adjudged and Decreed that all costs, including cost of this appeal, be paid out of the funds on hand now in the registry of the district court. Pursuant to LSA-R.S. 13:4816, the Golson heirs are cast for all such costs.
Reversed.