LOTTINGER, Judge.
This is a petitory action which was brought by the plaintiffs, who are the children and heirs of William J. Muff, deceased, against the defendants, Clara Muff Alger-missen and her husband, Charles Alger-missen; the heirs of Joseph L. Muff; and the heirs of Benjamin Muff. In this suit, the plaintiffs sought to be decreed the owners of two hundred acres of land in Tangipahoa Parish on the basis of a tax sale of the subject property to William J. Muff in 1939 for the 1938 taxes due the State of Louisiana. At that time the property was assessed in the name of Catherine Muff.
Prior to her death in 1918, and during her widowhood, Catherine Muff acquired the subject property. At the time of her death, Catherine Muff was survived by Clara Muff Algermissen, Benjamin Muff, John Muff, Joseph Muff, and William J. Muff. The plaintiffs are the children of William J. Muff, and the defendants are Clara Muff Algermissen and the children of Benjamin Muff and Joseph Muff. John Muff, subsequent to his mother’s death, sold his interest in the property to Clara Muff Algermissen and her husband.
In their petition, the plaintiffs alleged that the defendants were guilty of laches in that they were apprised of the necessity of paying taxes on the property, that they had disavowed any interest in either paying or contributing to the payment of taxes for a number of years, and that it was not until 1959 when the defendants were informed that oil had been discovered near the property that their interest was aroused, resulting in Charles Algermissen paying the 1963 taxes in the name of Joseph L. Muff, et al. The plaintiffs contend that the passage of such an inordinate length of time during which the defendants did not pay or contribute their proportionate share of the taxes and other circumstances which denote a complete lack of interest in the rights and ownership, and a failure to exercise any oi the rights usually attended to ownership having estopped the defendants from claiming title and the re-investiture thereof.
In their answer and reconventional demand, the defendants denied that they hac lost the right to their interest in the title to the property, that they were entitled to be recognized as the owners of their respective interests despite the tax sale, and that the purchase of the property in 1939 for the 1938 taxes by William J. Muff inured to their benefit as well. As stated above, Mrs. Catherine Muff, the common antecedent of both plaintiffs and defendants, purchased the subject property in 1914. She died in 1918 while domiciled in the State of Nebraska and was survived by the five children previously named. When this case was' tried, Clara Muff Algermissen was the only living child. The record reflects that William J. Muff, the father of the plaintiff, died in 1953.
*744 For an indeterminate period of just a few years after the death of Catherine Muff, her son-in-law, Charles Algermissen, administered her estate property, which included a farm located in Nebraska. About 1922 it was apparently decided by the family that William J. Muff would undertake to handle the estate property, and until 1948 he continued to act in the capacity of a manager or administrator of the Nebraska farm property, collecting the rents, and paying the taxes and expenses out of the revenue. He performed this same function with reference to the Louisiana property until the taxes for 1938 became due. The various defendants testified that they always considered and thought that the managerial and administrative duties, such as payment of taxes, collection of revenues, etc. were being exercised and handled by William J. Muff.
The plaintiffs in their answer to the defendants’ reconventional demand averred that the defendants refused to pay the taxes on the Louisiana property in 1934. Hubert G. Muff, one of the plaintiffs, and the only plaintiff witness who professed any knowledge of a conversation which allegedly took place between his father, William J. Muff, and Mr. Algermissen and his wife with reference to contribution on the Louisiana property taxes, testified that it was about 1937 when his father requested help from Mr. and Mrs. Algermissen in defraying the Louisiana property taxes. At that time, Mr. Muff testified that he heard Mr. Alger-missen, in the presence of Mrs. Algermissen, reply in substance that the Louisiana property wasn’t worth anything, and that he wasn’t going to pay any more taxes. Mr. Algermissen initially on cross-examination could not recall any such discussion, and on direct examination denied specifically that the conversation ever took place.
In his written reasons for judgment, the Trial Judge made the following observations :
“We find that William J. Muff con-cededly acted in a fiduciary or trust capacity for his co-heirs by handling their interests in Catherine Muff’s property from 1922 through 1948 as pertains to the Nebraska property at which time it was sold and the proceeds divided pro rata between the heirs and from 1922 through 1937 as pertains to the Louisiana property. In 1939 for the 1938 taxes William J. Muff bought in his individual name the remaining Louisiana property assessed in the name of Catherine Muff. According to the plaintiffs from the date of his tax purchase in 1939 to his death in 1953 the property was treated by William J. Muff as belonging to him individually, and thereafter, to the present date, plaintiffs consider they own the property as heirs of their father. They especially plead estoppel based upon asserted laches on the part of the defendants.
With the exception of the equivocal and indefinite testimony of Hubert G. Muff, one of the plaintiffs, who stated that he, at the age of about 19 years, heard a conversation at his home in Nebraska around the year 1937 in which his father brought up the question of the payment of the Louisiana taxes to Charles M. Algermis-sen and his wife, Clara Algermissen, with Mr. Algermissen refusing or being unwilling to advance any funds for this purpose, the record is barren of any other evidence indicating that William J. Muff intended to discontinue handling the Louisiana property in the same way that he handled his mother’s Nebraska property until 1948. It is true that the Algermissen denial of the occurrence of this conversation and the topics discussed varied in its degree of clarity and firmness in different segments of the subject testimony. However, plaintiffs with respect to the other defendants weakly claim that Mr. Alger-missen was thought to be an agent for Harold B. Muff, his wife, and the heirs of Joseph L. Muff. There is absolutely no shred of evidence that these latter persons were ever informed about the alleged need for tax contributions, the impending tax sale to William J. Muff or that they would thereby be divested of *745 their title interests in the property. To the contrary Harold B. Muff pointed out that neither his uncle, William J. Muff, nor anyone else had ever called on him for funds to help defray the Louisiana taxes or for that matter the Nebraska taxes; that he had never been told about the tax sale by his uncle or the plaintiffs, and it never occurred to him that there might not be enough revenue from the estate properties to defray the taxes.
Plaintiffs, nevertheless, in brief contend the defendants, by allowing a period of about 27 years to elapse from the date of the tax sale to the date of their recon-ventional demand to be reinvested with the property, and with the additional circumstances of manifesting no interest in the property until they learned of the enhancement of its value due to the oil play in 1959, and further by having failed to exercise any rights of ownership for such a lengthy period of time, have forfeited and waived any rights which they may have had at one time to reacquire the property. The only incident or.circumstance, other than the passage of time, to which the plaintiffs can cling in buttressing their claim that defendants should be estopped from re-asserting their title is substantially the contention that defendants’ interest had previously waned to the point of non-existence ánd did not arise and flare again until the property had burgeoned in value with the onset of the search for oil.
The Court cannot agree with this analysis, and we do not believe that the other factors and evidence taken as a whole suggest any intention or design by the defendants to relinquish their title. It does not appear unusual or extraordinary for co-heirs or co-owners to believe that sufficient revenue is derived from property so that a person in the capacity of a manager would have the wherewithall to defray the taxes and such other expenses as might be required for the proper husbanding of the property, especially in view of the fact that William J. Muff admittedly for a number of years prior to the tax sale had acted in the capacity of a manager of Catherine Muff’s estate for the account of himself and the other heirs, and, according to the weight of the evidence, he did not request or demand from his co-heirs any tax contributions nor did he inform his co-heirs of his entention to purchase the property at tax sale for his own account or that he actually did make such a tax purchase in 1939.
Therefore, the Court concludes that the equities stand on the side of the defendants. The burden clearly rests upon those parties urging estoppel to establish the facts upon which the plea is founded. The evidence convinces the Court that the defendants had no knowledge of any defect in their title, and in the absence of a showing of any acts or omissions on the part of the defendants constituting laches, the plea of estoppel is not well founded, and the tax sale to William J. Muff redounded to the benefit of the defendants as well as the plaintiffs.”
From this judgment the plaintiffs have appealed, setting forth several specifications of error, and one statement of the principal issue with which this appeal is concerned, which is whether the defendants by their conduct, attitude, nonaction and actions were guilty of laches and are estopped from asserting any interest in the land in dispute.
Counsel for both appellants and appellees have cited and discussed at length in their briefs the case of Atlantic Refining Company v. Golson, La.App., 127 So.2d 341 (1961), a case decided by the Second Circuit, which is quite similar in its factual situation to the case at bar, and which reviews the jurisprudence with reference to the question presented for determination herein. The facts in the Atlantic Refining Company case are briefly that in February of 1920, Golson owned an undivided one-half interest in certain property, and the remaining undivided one-half interest was owned in equal portions by Orell Jackson and Silia Jackson. *746 For the year 1921 the property was assessed to Golson as the owner of an undivided one-half, and the two Jacksons as owning the remaining interest. These taxes were not paid and the property was purchased on September 20, 1922 at a tax sale by Golson for a sum which represented the unpaid taxes and costs. For the years prior to the 1922 tax sale the address of the Jacksons had been separately given, but beginning with the 1921 notice the same were addressed to Mr. Golson, pursuant to his instructions. Thereafter, all notices were mailed to Mr. Golson and he paid the taxes on the entire interest and continued in possession as the owner thereof. Tax notices were never mailed to the Jacksons for any of their proportionate share of the taxes subsequent to those due for 1920. The question presented for determination in that case was the identical question presented for determination in this case; whether or not the co-owners were guilty of laches in not reimbursing the co-owners who purchased at Sheriff’s sale for the taxes within a reasonable length of time, and what, under the circumstances of the case, is a reasonable time.
In the Atlantic Refining Company case, the Golsons predicated their title of course on the undivided interest of the Jacksons which was purchased by their ancestor at the tax sale in 1922. They also filed a plea of estoppel against the Jackson heirs, the basis for the plea being that the Jacksons were estopped from asserting any title to the property by reason of the fact that any rights they might have possessed had been lost because of the unreasonable length of time which had expired since the sale; because of the passage of such unreasonable length of time, coupled with their own inactivity and laches, they were thereby estopped from asserting their title in the concursus proceedings. The Jackson heirs contended that the purchase by Mr. Golson of their undivided interest in the property at a tax sale did not vest any additional title in Golson, but was merely a payment by him of the taxes for them with the right reserved to them to reinvest title in themselves by the repayment of all such past due taxes.
In reviewing the jurisprudence our brothers in the Second Circuit made the following observation:
“ * * * It is now the well settled law of our State that the adjudication to one of several joint owners of property adjudicated at a tax sale does not divest the other co-owners of their interest in the property. The tax sale only operates as a payment of the taxes for the joint benefit of all of the co-owners, with the right on the part of the adjudicatee to be reimbursed the amount he paid. Bossier v. Herwig et al., 1904, 112 La. 539, 36 So. 557; Murphy v. Murphy, 1914, 136 La. 17, 66 So. 382. However, it has also been held that the right of the co-owners to become reinvested with title upon reimbursing the other co-owners of his share of the taxes is a right that must be exercised within a reasonable time, and if not exercised within such reasonable time, and third parties acquire an interest in the property on the strength of the recorded tax title without any knowledge of the equitable interest of the co-owners to become reinvested in his title, or reimbursing his co-owner for the taxes paid by him, such third person will be protected, and can plead the peremption provided for in Article 10, Section 11, of the Constitution against the attack on the tax sale. Cooper v. Edwards, 1922, 152 La. 23, 92 So. 721.
Furthermore on the question of reasonable time, we quote the following from Doiron et al. v. Lock, Moore & Co., Ltd., et al., 1928, 165 La. 57, 115 So. 366, at page 369:
‘There is no statutory law prohibiting the purchase of an undivided interest in land by a co-owner at tax sale; but if he does purchase, equity holds that the tax deed inures to the benefit of his co-owners, at their option.’
*747 In all of these cases granting the co-owner the right to reacquire his property, it has been repeatedly held that same must be done within a reasonable length of time. What is a reasonable length of time must be governed by the particular circumstances of each case. For example, in Doiron v. Lock, Moore & Co., supra, it was held that twenty years was an unreasonable length of time, where the former co-owners had full knowledge of the facts surrounding the loss of the property, and took no action until same increased in value. In the case of Bridges et al. v. Trevino et al., La.App. 1 Cir., 1953, 64 So.2d 528, rehearing denied, it was held that where the parties waited more than twenty years, and during all of said time the original tax debtors had full knowledge of the ownership of the property and had been requested to redeem same on several occasions, that they had waited an unreasonable length of time.
Without citing all of the cases touching upon the question of whether or not the tax debtors had waited an unreasonable length of time before offering to -redeem the property from the tax purchaser, we can say that in every case the decision was predicated upon the equitable principle of estoppel. In such cases the purchaser at the tax sale does not then acquire a valid title, but the tax debtor merely loses his right because his own laches and inactivity has lulled the purchaser into believing he has acquired title. In such cases the purchaser acquired title because the former owner was estopped to assert any right in himself. For this reason all of the cases on this question predicate their holdings on equitable principles.”
With reference to invocation of estoppel, the Supreme Court, through Chief Justice Fournet, observed the following in Harvey v. Richard, 200 La. 97, 7 So.2d 674, (1942) :
“The cases holding that estoppels are not favored by our courts are legion in our jurisprudence. Whenever estoppel is pleaded as an element of a cause of action, it must be pleaded specifically, the burden of proving the facts upon which the estoppel is founded, as well as the affirmative showing that he was misled by the acts and forced to act to his prejudice, resting upon the party invoking the doctrine.”
Further, in the Atlantic Refining Company case, the Court made the following statement which we believe correctly summarizes the effect of the jurisprudence :
“From our search of the jurisprudence, we have concluded that the co-owners cannot acquire a valid title to the remaining interest by means of a tax sale coupled with the mere passage of time, no matter what the duration thereof may be; that such co-owners can only be deprived of their title to such property under the equitable principle of laches and estoppel. In order for the co-owner to be estopped from reacquiring his property it is necessary for the one interposing such plea to not only show knowledge that something was wrong with the title, but knowledge of all the material facts" surrounding such defect. In other words, a person could hardly be estopped from asserting title to his property unless it had been affirmatively shown that he knew exactly what was necessary for him to do in order to perfect such title.”
Let us now consider the salient facts of this case in connection with the established jurisprudence. From the time that William J. Muff commenced the administration of the Nebraska and Louisiana properties all of the tax notices on land in both states were sent to him. The Nebraska farm was producing revenue and during the entire period was occupied by a tenant farmer. As informal administrator, William J. Muff collected the rents, administered the Nebraska property, and saw that the taxes on all of the property were paid. The record indicated that the Louisiana property did *748 produce some revenue in that stumps and timber were removed from the property after the commencement of William J. Muff’s administration. William Muff lived in close proximity to his sister and brother, and their relationship was very close, to the extent that the family gathered approximately twice each week at church and at other times.
From the evidence in the record it appears that William J. Muff allowed the Louisiana property to be sold at tax sale for non-payment of the 1938 state and parish taxes on June 22, 1939, and that he bought this property in his own name for $36.62. The only hit of evidence in the record which indicates that the defendants had any notice whatsoever of William Muff’s intention to purposely fail to pay taxes on the Louisiana property is the conversation testified to by Hubert Muff which allegedly occurred between William Muff and Charles Algermissen. This is the same conversation which is specifically denied by Charles Algermissen. The record is devoid of any indication whatsoever that the defendants were given notice of any character that William Muff had purchased this property in his own name.
The record also indicates that none of the defendants had any notice of the tax sale until 1963 when Mr. Algermissen and three of his nephews examined the records at the Courthouse in Amite, Louisiana and learned of the sale. None of the plaintiffs testified that their co-heirs, the defendants, were ever given any notice that their father had purchased the property at tax sale. Indeed, the only evidence contained in the record in this connection is the alleged conversation previously mentioned herein testified to by Hubert Muff and which would have occurred when he was seventeen or eighteen years of age.
Mrs. Clara Muff Algermissen and her husband, as well as Harold Muff, one of the children of Benjamin Muff, all testified positively that William J. Muff had never discussed with them the tax situation on either the Louisiana or the Nebraska properties.
They further testified that he never requested money from them to pay the taxes on either the Louisiana or the Nebraska properties, and that he never rendered an accounting to them for the money which he received from the properties and which he was administering in behalf of the heirs. They testified that they trusted him at all times and always assumed that his administration of the property was proper and correct. Counsel for appellees states in his brief and we believe that the record clearly supports the fact that the Louisiana and Nebraska properties were both considered by all of the defendants in the same light and maintained in the same status. The ownership of these properties was the same. They were both under the administration of William J. Muff and he collected the income and paid the taxes on behalf of all parties on both properties. He received the tax notices and he rendered no accounting to the other heirs. When the Nebraska property was sold in 1948, the sale price was distributed among all the co-heirs.
In the light of the jurisprudence and the facts of this case as shown by the record, we feel that under the plea of es-toppel, it was incumbent upon the plaintiffs to show that the defendants had knowledge that their interest had been acquired by William J. Muff at a tax sale. It was also incumbent upon the plaintiffs to show that they or their ancestor in title had made a reasonable effort to inform the other co-owners of the purchase at tax sale. The plea of estoppel being an equitable one, it is necessary that the one interposing same show his own good faith and diligence. The record does not convince us that the plaintiffs have borne the burden of proof as required of them; and that because the defendants have not been shown to have had knowledge of the loss of their property at tax sale, they could not be said to be guilty of laches, and thereby deprived of their rights to reacquire same.
*749 Accordingly, the judgment of the Trial Court is affirmed, and the plaintiffs and defendants, in the proportions set forth in the Trial Court’s judgment, are hereby recognized as the owners of the hereinafter described property:
“A certain tract or parcel of land situated in the Parish of Tangipahoa, State of Louisiana, and being more fully described as follows: The Northwest Quarter of the Southeast Quarter of Section Four (4), Township Three (3) South, Range Eight (8) East; South Half of the Southeast Quarter of Section Thirteen (13), Township Three (3) South Range Eight (8) East; the North Half of the Northeast Quarter of Section Twenty-Four (24), Township Three (3) South, Range Eight (8) East, containing two hundred (200) acres, more or less.”
appellants to pay all costs of this appeal.
Judgment affirmed.