*405
 
 LAND, Justice.
 

 In this case judgment was rendered in favor of plaintiffs, and defendant has appealed.
 

 On January 17, 1938, Carroll E. Walter, one of the plaintiffs, departed this life during the pendency of the appeal in this court. He died intestate at his domicile in Jennings, La., leaving surviving him Mrs. Ada Walter as widow in community, and Donald Ellsworth Walter, a minor child, as his sole and only heir at law, and issue of the marriage.
 

 On January 5, 1939, Mrs. Ada Walter, the duly qualified natural tutrix of the minor, obtained an order of this court substituting her as natural tutrix for the minor, as party plaintiff and appellee instead of Carroll E. Walter, deceased.
 

 After due consideration of, and examination into, the case, we have decided that the judgment appealed from is correct, and adopt as our own the opinion of the District Judge, and the reasons therein stated, for affirming the judgment.
 

 The opinion is as follows:
 

 “This is an action brought by the surviving widow, (since remarried) and the children of Carroll E. Walter, against the Calcasieu National Bank of Lake Charles, in Liquidation, to have themselves declared the owner of a certain note, executed on August 6, 1920, for the sum of $5,734.20, by F. B. Caffall, in favor of Henry E. Walter, the deceased husband and father respectively of the plaintiffs, which said note in (is) in the possession of defendant.
 

 “The plaintiffs' also ask that the said bank be ordered to deliver to them the said note, and in default thereof, that there be a money judgment in favor of the plaintiffs and against the said defendant for the diffence between the amount of the note above described, and a note given by the said Henry E. Walter to the said Bank in the sum of approximately $1,400.00, which said note was secured by the pledge of the first mentioned note of $5,734.20.
 

 “The exact date on which Henry E. Walter borrowed from the defendant bank, and gave his note for the loan of appromately (approximately) $1,400.00, and pledged the note for $5,734.20 to secure the loan, does not appear from the petition, but it does appear that the transaction took place prior to May 14, 1921, because on that date Henry E. Walter departed this life.
 

 “The plaintiffs further allege that just prior to the closing of the Succession of Henry E. Walter, on June 29, 1923, they were advised by the defendant that the defendant had acquired title to the note for $5,734.20, under its contract of pledge, and that the advice was- false and fraudulent, and designed to defraud the plaintiffs.
 

 . “It further appears from the petition that the plaintiffs learned, subsequent to March 9, 1935, that the defendant has never acquired title to the said note for $5,734.20, and that the defendant has refused to deliver possession of the said note, for the purpose of enabling plaintiffs to file a suit against the maker, and that the defendant itself has failed and refused to institute a suit on the said note.
 

 
 *407
 
 “The defendant hank admitted that originally the said note for $7,534.20, ($5,734.20) signed by Frank B. Caff all, in favor of Henry E. Walter, was pledged by the latter to the bank to secure the payment of a note made by Henry E. Walter in favor of the bank.
 

 “The defendant specially admitted that it had advised the plaintiffs that the bank had acquired title to the said note under its pledge, and that said advice not only was not false and fraudulent, but was actually true and correct, and that in fact the said bank, at this time, owns the said note.
 

 “The defendant especially plead the prescription of one, three, five and ten years.
 

 “Some time in 1921 or 1922, so Mrs. Doornbos (formerly Mrs. H. E. Walter) testified, she was adviced by Rice, the manager of the defendant’s branch bank at Lake Arthur, that the bank had taken over the pledged note of $5,734.20. In 1922 Mr. Rice informed Mr. J. O. Modisette that the bank had acquired the pledged note mentioned. Both Mrs. Doornbos and Mr. Modisette testified, on June 29, 1923, on the application to homologate the final account in the Succession of Henry E. Walter, that they had been advised by Rice that the bank had enforced its pledge of the $5,734.20 note, given by Walter to the bank as collateral to secure the payment of the note of Walter to the bank, and had' ‘taken over’ the note.
 

 “This testimony is the basis of the bank’s claim that plaintiff’s action to recover the pledged note has prescribed.
 

 “Mrs. Doornbos, none of the other plaintiffs,.nor Mr. Modisette ever had the slightest reason to doubt the correctness of Rice’s statement that the bank had acquired title to the note, not (nor) did any of them .have the slightest information which would have caused an ordinarily prudent business man to investigate the truthfulness of the information given them by Rice, until 1935, when the bank, for the first time, contended it held the $5,734.20 pledged note to secure a $225.00 loan, made by the bank to Carroll Walter, a son of Henry E. Walter.
 

 “In all of the following letters it was claimed by the bank that it held the $5,-734.20 note as collateral to Carroll Walter’s loan for $225.00; ‘P-3’, letter of Major Knapp, Secretary of the trustees of the bank, dated March 26, 1935; ‘P-9’, letter of Major Knapp, dated April 2, 1935; ‘P-11’, letter of Major Knapp, dated April 4, 1935; and ‘P-13’, letter of Major Knapp, dated April 11, 1935.
 

 “In 1935, Carroll E. Walter received for the first time information to the effect that the bank claimed it had not acquired the note in question, when Major Knapp told him the bank was holding the note to secure Carroll E. Walter’s $225.00 loan from the bank.
 

 “Mr. Modisette also got his first information in 1935 that the bank claimed it had not acquired title to the $5,734.20 pledged note, but was holding it to secure the loan to Carroll E. Walter of $225.00.
 

 “Mrs. Doornbos also first learned in 1935 of the bank’s change of position in regard to the note sued for.
 

 “When plaintiffs, and their counsel, Mr. Modisette, learned from the bank’s letters,
 
 *409
 
 noted above, that the bank was no longer claiming ownership of the note, but was claiming to hold it as collateral to a note entirely different from that it was originally pledged to secure, their suspicions were aroused, and from that date until this they have sought, but unsuccessfully, to secure from the bank a clear and intelligent account of just what has happened in regard to the pledged note.
 

 “No satisfactory explanation of the transaction was made by the bank during the trial of this case, and it was with difficulty that the court has ascertained the facts. No effort to obtain the testimony of Rice, the manager of the Lake Arthur branch, who handled this note, was shown to have been made by the bank, although his whereabouts were known. On motion of counsel for the bank, the case was continued in order to permit the bank to obtain the testimony of their attorney in Jennings. When the case was called, in Jennings, although the bank’s attorney whose testimony was desired was present in open court, the bank closed its case without calling him as a witness or asking him a single question.
 

 “Where a witness, who knew something of the transaction, was present, or his testimony available to the bank, and the testimony of such witness was not offered, it must be presumed it would not have been favorable to the bank.
 

 “In its answer to the petition, the bank claims it acquired title to the pledged note, but how or when is not stated.
 

 “Counsel in their brief again make the statement that the bank acquired the pledged note, but no evidence in support of that contention was offered.
 

 “Major Knapp testified that the bank had no record, stating ‘we took over the Caffall (pledged) noté’, and no record showing the bank acquired title to the note. Nor did Major Kna'pp or any one else testify how, when,-in what manner, or by what process the bank got the note. In fact, the bank did not even offer the act of pledge of this note, or explain their failure to do so.
 

 “No notice appears to have been given the plaintiffs of the bank’s intention to enforce the pledge, and no public notice of the same was mentioned.
 

 “Since the bank admitted in its answer that it held the $5,734.20 note as collateral to the H. E. Walter note, its continued possession as pledgee, and without change of title, is presumed by the law, in the absence of proof to the contrary, and there was no such proof in this case. C.C. art. 3489.
 

 “Of course, the burden of offering such proof rested upon the bank, because it contended it held by a title different from that under which it was sworn to have acquired the note.
 

 “If the bank had acquired this pledged note at public sale, it is evident that the proof of such fact would not likely be difficult.
 

 “Of course, the bank could not simply treat the pledged note as its own, no matter what the terms of the pledge, upon failure to pay the note secured by the pledge, and without observing the formali
 
 *411
 
 ties of the law. Such an action would be ‘obnoxious to good morals, odious, oppressive, and unconscionable’. Shexneider v. Simon Rice Milling Co., 145 La. 831, 83 So. 28.
 

 “The bank having repeatedly claimed to hold the Caffall pledged note as a pledgee, years after, it first claimed it acquired the note absolutely; having admitted it originally held the note as pledgee, and offering no evidence written or verbal, showing a change in its title, the law in such case presuming the original pledge to continue, and having failed to produce the testimony of witnesses, in a position to know relevant facts, when such testimony was available, it must be held that the bank never acquired title as owner to the pledged Caffall note.
 

 “Prescription does not run in favor of a pledgee and against a pledgor, as 'to the thing pledged, as lo'ng as the • pledge remains in effect.
 

 “If it be contended, in support of the plea of prescription, that in 1921' or 1922 the bank did not legally acquire ownership of the pledged note, but then took it and dealt with it as its own, with the knowledge on the part of the plaintiff that the bank claimed ownership of the note, prescription would not run against the plaintiffs, for one reason among others, that the bank induced them to believe the bank had acquired legal title by virtue of its pledge, when that statement of the bank was untrue.
 

 “The note, marked ‘P-1’, dated December 1, 1920, for $1,300.00, made by H. E. Walter in favor of the bank, was renewed by the note marked ‘P-2’, signed by Mrs. H. E. Walter, to the bank, for $1,390.00. Note ‘P-3’, is signed by H. E. Walter, is for $1,390.00, is made payable to the bank, and bears the same date, and same date of payment as ‘P-2’.
 

 “Note ‘P-1’, mentioned above, was the original note, the. payment of which was secured by the pledge of the Caffall note to H. E. Walter, in the sum of $5,734.20, (Major Knapp).
 

 “Mrs. Doornbos testified the succession of her husband never paid the $1,390.00 note, because it had no money. This note was carried on the account of the administratrix of H. E. Walters Succession as being dated May 1, 1921, bearing 8% interest and 10% additional as attorneys’ fees, arid is evidently the note marked ‘P-3’ and filed in this case. Major Knapp testified the Walter note amounted to $1,559.61, when his account was cancelled out on April 24, 1922. Just how the note increased from $1,390 to $1,559.61 when cancelled, does not appear.
 

 “Major Knapp also testified that the bank reduced the pledged Caffall note to the sum of $1,559.61, the amount of the Walter note still unpaid, because Caffall claimed he owed Walter nothing. Later Major Knapp testified that in the reorganization of the Caffall Implement Company, the bank was. paid the sum of $1,559,61, in bonds of the Caffall Oil Corporation, in satisfaction of the Caffall note.
 

 “The Major also testified that on April 24, 1922, when the H. E. Walter note of $1,559.61 was cancelled, Caffall’s line of
 
 *413
 
 credit with the bank was increased by that amount. I take it the Major meant to say that when the bank cancelled the H. E. Walter note for $1,559.61, it took the original $5,734.20 Caffall note, reduced it to $1,559.61, and that it was paid by bonds of the Caffall Oil Corporation.
 

 “Major Knapp makes it plain that at this time H. E. Walter’s Succession owes the bank nothing, because Caffall, in the reorganization of his affairs and those of the Caffall Implement Company, saw to it that bonds of the Caffall Oil Corporation, in the amount of the Walter Note, were given to the bank for that note.
 

 “In other words, the original Walter note has been paid the bank by Caffall, and not by Walter’s Succession, and the original $5,734.20 Caffall note, pledged to secure the Walter note to the bank, is no longer legally held as collateral to any debt.
 

 “Notwithstanding the fact that the Caffall note ceased to be collateral of the Walter note on April 24, 1922, when the bank cancelled the Walter note, or on some date subsequent to December 5, 1924, when the Caffall Implement Company was in receivership, and the $1,559.61 Caffall note was paid in bonds of the Caffall Oil Corporation, prescription has not run on plaintiff’s right to secure their note, because there is no evidence in the record that the plaintiffs knew then or later that the $5,-734.20 note, for the reasons mentioned, ceased to be collateral.
 

 “One pleading prescription bears the burden of establishing all facts necessary to show prescription has run. This the bank has not done.
 

 “From what has been said, it follows that the Court is of the opinion that the bank no longer has any interest in 'the Caffall note of $5,734.20.
 

 “For the foregoing reasons, the law and the evidence being in favor thereof:
 

 “It is ordered, adjudged and decreed that there be judgment herein, in favor of the plaintiffs and against the defendant, ordering and commanding the said defendant to deliver to the plaintiff, within ten days from the time this judgment becomes final, the original note signed by F. B. Caffall, in favor of Henry E. Walter, dated August 6, 1920, due December 1, after date, for $5,734.20, with 8% per annum interest thereon from date until paid, together with 10% additional as attorney’s fees, which, said note is subject to a credit of $878.85, paid November 10, 1920.
 

 “If the said note is not delivered as hereinabove ordered, then and in that event a money judgment is hereby rendered in favor of said plaintiffs, and against the said defendant, for said note, in principal, interest and attorney’s fees, subject to said credit.
 

 “Judgment read, rendered and signed in open court, at J.ennings, Louisiana, on this December 21, 1936.
 

 “[Signed] Thos. F. Porter,
 

 “District Judge.”
 

 Judgment affirmed.