135 So.2d 559 (1961)
BRITISH AMERICAN OIL PRODUCING COMPANY et al.
v.
Emanuel J. GRIZZAFFI et al.
No. 5471.
Court of Appeal of Louisiana, First Circuit.
November 13, 1961.
Rehearing Denied December 18, 1961.
Certiorari Denied February 2, 1962.
*561 Ferdinand M. Lob, Cyril J. Gracianette, Metairie, for defendants-appellants.
Doyle, Smith & Doyle, New Orleans, plaintiff-appellee.
Nathan A. Levy, Jr., Franklin, Milling, Saal, Saunders, Benson & Woodward, New Orleans, for defendants-appellees.
Before LOTTINGER, LANDRY and REID, JJ.
LANDRY, Judge.
This is a concursus proceeding instituted by The British American Oil Producing Company, Sohio, Petroleum Company, Southwest Gas Producing Company, Inc. and Harold P. Farthington pursuant to LSA-R.S. 13:4811 et seq., as mineral lessees of a certain tract of land situated in St. Mary Parish. Said lessees have deposited in the registry of the district court approximately $6,000 in royalties accruing under leases taken from the several claimants of the land and ask that the rights of said adverse parties be adjudicated and the accrued as well as all future royalties due under said leases be ordered distributed accordingly.
At issue between the various contending litigants is ownership of an undivided one-third interest in a certain 30 acre tract of land purchased in indivision by Elihu Robinson, Sr. and Alfred Austin from Elizabeth Grundy by act of sale dated March 18, 1886, which recited that the purchase price therefor was paid in the proportion of two-thirds by Robinson and one-third by Austin.
The deed from Mrs. Grundy describes the property conveyed as follows:
"That certain tract of land lying and being situated on Bayou Boeuf in this Parish of St. Mary, Louisiana, and being a parcel or portion of the `Dr. Tarleton Plantation' now owned by the vendor, the portion of land herein sold containing thirty (30) Arponts Acres (sic) and being bounded North by lands of Firmin Beadle, East by Bayou Boeuf, South by lands of Mrs. M. J. Coleman and West by land of Dr. John Pugh, formerly Mrs. Wafford, the portion and quantity of land herein purchased by the vendee Elihu Robinson being twenty Arpanto Acres (sic) and the quantity of land herein purchased by the other vendee Alfred Austin being ten Arponta Acres (sic)."
Said deed further recites the following
"This sale is made and accepted for, and in consideration of the price and sum of
. . . Three Hundred 00/100 Dollars. . .
Two hundred Dollars to be paid by Robinson and One hundred Dollars to be paid by Austin paid and payable, as follows, viz:

*562 Robinson paying Seventy five Dollars Cash on account of his purchase of the twenty Arpents acres (sic), receipt whereof is hereby acknowledged by the vendor & good acquittance given therefore; the balance to wit: One hundred & twenty five Dollars on a credit of one and two years & divided in two equal instalments (sic) of Sixty two 50/100 Dollars each; the first instalment (sic) being payable the 18th day of March 1887 and the second instalment (sic) on the 18th day of March 1888; Austin paying Sixty Dollars Cash on account of his purchase of the ten Arpents acres (sic), receipt whereof is hereby acknowledged by the vendor and good acquittance given therefore; the balance to wit: Forty 00/100 Dollars on a credit of one year from date of this sale and payable on the 18th day of March 1887."
The respective claimants of the land and royalties involved herein are the Robinsons and Colliers, heirs and assignees of Elihu Robinson, Sr., who are opposed by the Singletons and Grizzaffi, the heirs and assignees of Alfred Austin. The principal legal point at issue herein is whether one co-owner may acquire by prescriptive title the interest of a co-owner in and to property held in common.
Following the joint purchase of the property by Robinson and Austin in 1886 the entire 30 acres was assessed to them as co-owners under the names of "A. Austin and Robinson" for the years 1887, through 1904, inclusive. In the year 1905, a change of said assessment appears on the rolls indicating the land was assessed to its owners separately as follows:
"Austin A. Mrs. C/O Elihu Robertson 10 Beadle Robinson Bayou, Coleman & Pharr, Davies"
"Robertson Elihu H & 20 Powell Boeuf Coleman Wofford"
From 1906 through 1910, inclusive, subject property was assessed in the following manner:
"Austin A. Mrs. and Robertson 10 Robertson, Bayou, Coleman & Pharr, Davis
"Robertson, L U H & L Powell, Boeuf, Coleman, Wolford"
From the date of purchase Robinson paid all taxes assessed against the property in question save and except those assessed separately for the year 1910 covering the ten acres carried separately in the name of "Austin A. Mrs. and Robertson", which taxes were not paid and the property so assessed was on June 24, 1911, adjudicated to Jules M. Burguieres at tax sale to effect payment thereof. On January 9, 1913, Burguieres conveyed to Elihu Robinson, Sr. (the original co-owner of Austin) the property of Austin acquired by Burguieres by the tax sale of June 24, 1911. The one-third undivided interest acquired by Robinson from Burguieres in the manner above indicated is the property in dispute herein.
It is conceded by all parties that Elihu Robinson, Sr. lived on subject property, farmed it and raised cattle thereon from the date of its joint purchase with Austin until Robinson's death on January 15, 1941. The nature and character of Robinson's possession and his alleged intention to possess adversely as to Austin forms the crux of this litigation and is an issue seriously and violently disputed.
On April 20, 1948, in compliance with an order of the State Auditor issued pursuant to the provisions of Act 113 of 1938 (LSA-R.S. 47:1991) the Clerk of Court, St. Mary Parish, Louisiana, cancelled and annulled the tax sale of June 24, 1911, to Jules M. Burguieres. Cancellation of said tax sale was directed by the Auditor predicated upon the affidavit of Shinn (who had previously purchased a portion *563 of the undivided one-third interest claimed by the aforenamed Austin heirs) reciting that the tax sale to Burguieres was a nullity because of dual assessment and prior payment of taxes due on the interest conveyed to said tax purchaser.
On September 9, 1910, (the year of the unpaid assessment in the name of Austin) Elihu Robinson, Sr. (the initial co-purchaser of Austin) instituted a partition suit against the heirs of Austin seeking a division of the property held in common. It is conceded by all parties that this partition suit was never prosecuted to judgment.
Finally, by act of sale dated June 7, 1952, the Austin heirs and Shinn conveyed to Mrs. Carrie Cutrera Grizzaffi the undivided one-third interest acquired by said vendors from and through Alfred Austin, reserving, however, an undivided one-half interest in the mineral rights therein. As a result of the foregoing history (as well as certain other transactions not material to the issues herein presented), the following parties as heirs and assigns of Elihu Robinson, Sr. assert title to the whole of subject property and all royalties produced or to be produced therefrom and, alternatively, an undivided two-thirds interest in said land and royalties in the following proportions, to-wit: Thelma Robertson Collier, one-third; Sidney N. Collier, one-ninth; Gillon N. Robertson, one-third; and Wilkerson L. Robertson, two-ninths.
Opposed to the Robinson (Robertson Heirs) are the heirs and assigns of Austin, namely, Mr. and Mrs. Emanuel J. Grizzaffi, who collectively claim an undivided one-third interest in the land and an undivided one-sixth interest in the minerals and royalties (under a lease of said one-sixth mineral interest providing for payment of royalties in the amount of one-fourth of all oil produced), and the following parties claiming mineral interests only in the proportions hereinafter set forth, to-wit: Celestine Singleton Reado, Willie Singleton, Alice Singleton Johnson, Martha Singleton Bell, Olivia Singleton Ruffin, Wilson Singleton, Alvin Singleton, Winnie Kirtman Wesley, Lucille Kirtman Zilton, Ella Kirtman Burrell, Louis Kirtman, Rosa (Rosie) Singleton, Marie (Merie) Singleton Knight, Hazel Singleton Riley, Eara Singleton Jackson, Daniel Singleton, Moses Singleton, Albert Singleton and Bertha Singleton Wilson, collectively, an undivided one-eighth, and Mike Topousis, an undivided one-twenty-fourth.
In the trial court, as well as on appeal, the position of the Robinson heirs is that cancellation of the 1911 tax sale to Burguieres in 1948, predicated on the affidavit of Shinn in conformity with LSA-R.S. 47:1991 was invalid because said statute is unconstitutional inasmuch as it violates the due process clause of Article 1, Section 2 of the Louisiana Constitution, LSA, by failing to provide a procedure whereby parties adversely affected by such cancellations shall be given prior notice thereof and an opportunity to be heard. The Robinson heirs further contend they are owners of the property in its entirety by virtue of prescription of 10 years (based on the deed from Burguieres) to their ancestor in title, Elihu Robinson, Sr.) and 30 years by virtue of the continuous, open adverse possession of the whole 30 acre tract by their said ancestor and themselves. Lastly the Robinson heirs maintain that the Austin heirs and Grizzaffi are estopped by laches from asserting any claim of ownership in the property in dispute. In connection with the pleas of prescription of 10 and 30 years made on behalf of the Robinson heirs, learned counsel for said parties concedes the general rule in this state to be that one co-owner may not prescribe against another but contends the present case falls within the exception thereto which holds that one co-owner may prescribe against another where notice of intention to adversely possess has been given. On this issue esteemed counsel strenuously argues the trial court erred in concluding no such notice was given the Austin heirs in the case at bar.
*564 On the contrary learned counsel for the Austin heirs argue the trial court correctly held the tax sale of June 24, 1911, to Jules M. Burguieres an absolute nullity because of the dual assessment of and prior payment of taxes due on the interest of Austin therein attempted to be sold. It is further contended by the Austins that since the Robinsons virtually concede the duality of the controversial assessment and do not attack the finding of the trial court on this issue but rather seek to establish the unconstitutionality of LSA-R.S. 47:1991 in pursuance of which the cancellation was effected, the constitutionality of the statute is, therefore, immaterial because, irrespective of the validity of the statute, the tax sale is null for dual assessment and prior payment of taxes. The Austins next maintain that the pleas of prescription made on behalf of the Robinsons are without merit or foundation because of the nullity of the tax sale and the failure to the Robinsons to give notice of adverse possession to their co-owners.
The learned trial court held the tax sale null and void and declared the Austins owners of an undivided one-third interest in the land on the ground that one co-owner may not prescribe against another and that the Robinsons failed to bear the burden of proving they came within the exception to the general rule by establishing notice of adverse possession.
For reasons which will hereinafter become manifest our determination of the validity of the disputed tax sale and the constitutionality of LSA-R.S. 47:1991 is not necessary to a decision of the issues presented herein and we refrain from expressing any opinion whatsoever with respect thereto.
As correctly pointed out by learned counsel for the Austins and conceded by counsel for the Robinsons, it is the well settled jurisprudence of this state that owners in indivision cannot acquire by prescription the right of their co-owners in and to property held in common. Litton v. Litton, 36 La.Ann. 348; Simon v. Richard, 42 La.Ann. 842, 8 So. 629; Dew v. Hammett, 150 La. 1094, 91 So. 523; Hill v. Dees, 188 La. 708, 178 So. 250; Arnold v. Sun Oil Company, 218 La. 50, 48 So.2d 369; Atlantic Refining Co. v. Golson, La. App., 127 So.2d 341.
It is likewise admitted by all concerned that an exception to the foregoing rule is recognized in those instances wherein the adversely possessing co-owner gives notice to his owner or owners in common that he intends to possess contrary to the common interest. Under such circumstances one owner in common may prescribe against a party owning in indivision with him provided such possession be clearly hostile and notice be given thereof. Ethredge v. Watts, 137 La. 686, 69 So. 95; Liles v. Pitts, 145 La. 650, 82 So. 735; Gill v. Robinson, 11 Orleans App. 226 and Arnold v. Sun Oil Company, 218 La. 50, 48 So.2d 369.
In assessing factual circumstances to determine whether a particular case falls within the exception rather than the general rule it has been held that mere occupancy, use, payment of taxes and similar acts of possession will not suffice to constitute notice of adverse possession to an owner in common. Lee v. Jones, 224 La. 231, 69 So.2d 26; Alba v. Smith, 228 La. 207, 81 So.2d 863; Hodgeson v. McDaniel, 233 La. 180, 96 So.2d 481, Banks v. Yarborough, La.App., 104 So.2d 283.
Registry of a new title does not ipso facto constitute notice to a co-owner that the possession of his owner in common has become adverse. John T. Moore P. Co. v. Morgan's Louisiana & T. R. & S. S. Co., 126 La. 840, 53 So. 22.
The most recent case in point appears to be that of Atlantic Refining Company v. Golson, La.App., 127 So.2d 341, which reiterates the rule announced in Bossier v. Herwig et al., 112 La. 539, 36 So. 557; and Murphy v. Murphy, 136 La. *565 17, 66 So. 382; to the effect that adjudication to one of several joint owners of property sold for nonpayment of taxes does not divest the other co-owners of their interests therein, the sale operating only as a payment of taxes due for the joint benefit of all co-owners. By the same token the purchase of one co-owner of the interest of another from the adjudicatee thereof at a tax sale, operates only as a tax redemption thereof for the benefit of all owners in common. In this regard we note the following pertinent language appearing in Atlantic Refining Co. v. Golson, supra [127 So.2d 343]:
"The most important issue presented to us for decision is whether or not the purchase by Mr. Golson of the undivided interest of the Jackson heirs by a tax deed in 1922 vested him with title to their interest. It is now the well settled law of our state that the adjudication to one of several joint owners of property adjudicated at a tax sale does not divest the other co-owners of their interest in the property. The tax sale only operates as a payment of the taxes for the joint benefit of all of the co-owners, with the right on the part of the adjudicatee to be reimbursed the amount he paid. Bossier v. Herwig et al., 1904, 112 La. 539, 36 So. 557; Murphy v. Murphy, 1914, 136 La. 17, 66 So. 382."
Considering the language employed in the deed in question, it is clear that it constituted Elihu Robinson, Sr. and Alfred Austin owners of subject property in common in the proportion of two-thirds to Robinson and one-third to Austin. The deed is to them jointly and covering the tract as a whole. There is no mention of a particular 20 acres being transferred to Robinson or a specific 10 acres being conveyed to Austin. The recitation that Robinson paid two-thirds and Austin one-third of the price characterizes the purchase as an acquisition in common in the proportions recited. Oxford v. Barrow, 43 La. Ann. 863, 9 So. 479; Manning v. Harrell, La.App., 59 So.2d 389.
It will be recalled the assessment for the year 1910, pursuant to which the interest of Austin was sold to Burguieres read as follows: "Austin A., Mrs. and Robertson. 10 Robertson, Bayou, Coleman & Pharr, Davis". This assessment was patently erroneous in that it evidently purported to assess a specific or particular 10 acres to Austin whereas Austin was not the owner of a 10 acre tract but merely an undivided third of thirty acres. The assessor could lawfully assess and tax only the interest acquired by Austin, therefore, if the 1910 assessment in question was intended as a separate assessment of Austin's property, it could only cover his actual interest therein, namely, an undivided one-third of the whole tract. Therefore, at most said sale conveyed the undivided interest of Austin in the entire 30 acres and could not convey a specific 10 acre tract.
Assuming, arguendo, the validity of the tax sale to Burguieres and the nullity of its cancellation, as contended by the Robinson heirs, the plea of prescription tendered on behalf of the Robinson heirs predicated on Article 3479 LSA-C.C. is without foundation considering that (for reasons hereinafter shown) the indispensable element of good faith has not been made to appear by the parties relying thereon. Good faith being a vital component of a plea of 10 years prescription under our Article 3479 LSA-C.C., it was incumbent upon the proponents thereof to establish facts necessary to sustain said plea. Labarre v. Rateau, 210 La. 34, 26 So.2d 279; Pierce v. Hunter, 202 La. 900, 13 So.2d 259; Walter v. Calcasieu Nat. Bank of Lake Charles, 192 La. 402, 188 So. 43; and Boyet v. Brushwood Methodist Church, La.App., 98 So.2d 593, the latter case being reversed on grounds not material to the case at bar.
The vital element of legal good faith appears lacking in the case at bar considering a co-owner purchasing the interest of a fellow co-owner cannot be held *566 in legal good faith in the absence of a showing that the co-owner's interest thusly purchased was aware of or had notice of such event.
Likewise, the plea of 30 years prescription interposed on behalf of the Robinson heirs on the authority of LSA-C.C. Article 3499 is unavailable in the case at bar because, as hereinafter shown, the record herein contains no evidence of an intent to adversely possess and no proof of notice to Austin or his heirs and assigns.
It is the settled jurisprudence of this state that a co-owner has the right to use the property held in common with others for the purposes for which it is destined such as cultivation of farm land, Stinson v. Marston, 185 La. 365, 169 So. 436; and he need not pay rent for such use. Juneau v. Laborde, 228 La. 410, 82 So.2d 693.
Unless the possession, use and occupancy exercised by one co-owner be shown to have been intended by him to be adverse to his co-proprietor and clear and precise notice thereof imparted to the co-owner, such use and occupancy is presumed to be for the benefit of all persons owning an interest in the property. Demarco v. Duplantis, La.App., 88 So.2d 735.
The rationale of the foregoing rule is that since all co-owners have the mutual right to use, occupancy and possession of property held in common provided such use, occupancy and possession is not to the exclusion of the other co-owners, either co-owner may possess or use the entire property and any co-owner who is dissatisfied with such arrangement is entitled to relief therefrom in the form of an action of partition. Loret v. Fugler, La.App., 71 So.2d 384; Demarco v. Duplantis, La.App., 88 So.2d 735.
Since the burden of proving notice rested clearly upon the Robinson heirs, we shall now consider the evidence adduced in the case at bar bearing upon this vital issue.
It is uncontroverted that following possession of the property by Robinson and Austin in 1886, Elihu Robinson, Sr., who owned an undivided two-thirds interest therein, took possession of subject property, resided thereon and conducted farming and cattle raising operations on the entire tract. Aside from these acts of possession, counsel for the Robinson heirs contend that notice of adverse possession was communicated to the Austin heirs not only by Robinson's residence thereon and continued use of the property but also by his payment of taxes, filing of homestead exemptions for several years and also institution of the partition suit filed in 1910.
The testimony of the various witnesses including some of the Robinson heirs themselves are merely to the effect that their ancestor and they themselves resided upon the property over many years and that the Austin heirs never paid taxes or evidenced any interest in or exercised any use or control over the land in dispute.
The record is devoid of evidence which even remotely suggests that notice of intention on the part of Robinson to hold adversely to his co-owner was ever communicated, made known or imparted to Austin. While it is conceded that Robinson did, in fact, maintain possession of the property and used it for purposes for which it was suitable, it was no more than Robinson had a perfect legal right to do as a co-owner thereof until such time as either co-owner became dissatisfied with such arrangement and provoked a partition of the property. Although some evidence was adduced by the Austin heirs to establish that the possession of Elihu Robinson, Sr. and certain of his issue was somewhat in the nature of a tenant with the consent and acquiescence of the Austins, we believe a fair analysis of the evidence fails to sustain such a contention. This, however, becomes a matter of no consequence in considering the *567 burden was not incumbent upon the Austin heirs to prove that Robinson did not hold adversely but, as hereinabove previously shown, the burden rested upon the Robinson heirs to prove not only that their possession was, in fact, adverse, but that knowledge of such contrary possession was made known to the Austins.
The fact that homestead exemptions were registered in the name of Robinson does not constitute notice to the Austins that the possession of the former had become adverse, it having been previously held in John T. Moore P. Co. v. Morgan's Louisiana & T. R. & S. S. Co., 126 La. 840, 53 So. 22, that registry of a new title is not notice to a co-owner that possession has become adverse.
The Robinson heirs contend that filing of the partition suit in the year 1910 by Robinson constituted notice that any subsequent possession by him would be adverse to the Austins. In this regard we note that although a copy of the petition filed by Robinson to seek a division of the property appears in the record, it is not shown that service thereof was made upon Austin or anyone claiming through him. The mere filing of such a suit (especially in the absence of a showing that service thereof was had) would not constitute such notice as to commence the running of prescription against one co-owner in favor of another who alleges adverse possession.
It is not shown that the Robinsons ever made demand upon their co-owner for reimbursement of taxes paid upon the property in question. Neither does the record indicate unequivocal, hostile possession made known to Austin, his heirs and assigns.
Lastly, able counsel for the Robinsons contends the judgment of the trial court is erroneous in that it ignores the well settled jurisprudence established in Duson v. Roos, 123 La. 835, 49 So. 590; Cooper v. Edwards, 152 La. 23, 92 So. 721; Doiron v. Lock, Moore & Co., 165 La. 57, 115 So. 366; Holloway v. Holloway, 221 La. 875, 60 So.2d 468; to the effect that based upon equitable considerations, a tax debtor who waits an unreasonable time before offering or attempting to redeem his property sold at tax sale is denied the right to do so even though his interest has been acquired by a co-owner. As correctly pointed out by capable counsel, denial of recovery in such instances is predicated not on the theory that the co-owner has acquired title but on the principle that the tax debtor loses the right of reacquisition which he otherwise possessed.
Unfortunately for the proponents of the plea of laches or estoppel, estoppels are not favored in our law. See Federal Land Bank of New Orleans v. Mulhern, 180 La. 627, 157 So. 370, and a plea of estoppel or laches must not only be specifically plead but the burden of proving the facts upon which it is founded rests on the party invoking the doctrine. Harvey v. Richard, 200 La. 97, 7 So.2d 674; Sonnier v. Fris, 220 La. 1085, 58 So.2d 393; Arkansas La. Gas Co. v. Thompson, 222 La. 868, 64 So.2d 202; Eaton v. Eaton, 227 La. 992, 81 So.2d 371; Hayward v. Carolina Ins. Co., La.App., 51 So.2d 405; Torrance v. Caddo Parish Police Jury, La.App., 100 So. 2d 238.
Counsel for the Austin heirs directs attention of the Court that the Robinson heirs have failed to specifically plead the doctrine of estoppel or laches upon which they now seek to rely. We have carefully read every pleading filed on behalf of the proponents of said pleas and are unable to find any instance in which a plea of estoppel or laches has been formally tendered. It follows, therefore, that the pleas of estoppel and laches may not be considered by us herein.
For the reasons hereinabove set forth:
It is ordered, adjudged and decreed that there be judgment herein recognizing:
a) Thelma Robertson (Robinson) Collier to be owner of an undivided two-ninths interest;
*568 Gillon N. Robertson (Robinson) to be owner of an undivided two-ninths interest;
Wilkerson L. Robertson (Robinson) to be owner of an undivided four-twenty-sevenths interest;
Sidney N. Collier to be owner of an undivided two-twenty-sevenths interest;
b) Mrs. Carrie Cutrera Grizzaffi and Emanuel J. Grizzaffi, collectively, to be owners of an undivided one-third interest, less and except an undivided one-sixth of the oil, gas and minerals;
c) Willie Singleton, Alice Singleton Johnson, Martha Singleton Bell, Celestine Singleton Reado, Olivia Singleton Ruffin, Wilson Singleton, Alvin Singleton, Daniel Singleton, Moses Singleton, Rosa (Rosie) Singleton, Hazel Singleton Riley, Marie (Marie) Singleton Knight, Albert Singleton, Eara Singleton Jackson, Bertha Singleton Wilson, Winnie Kirtman Wesley, Lucille Kirtman Zilton, Ella Kirtman Burrell and Louis Kirtman to be owners, collectively, of an undivided one-eight of all the oil, gas and minerals; and
d) Mike Topousis to be the owner of an undivided one-twenty-fourth of all the oil, gas and minerals;
in and to the following described property:
That certain tract of land lying and being situated on Bayou Boeuf in the Parish of St. Mary, Louisiana, and being a parcel of portion of the "Dr. Tarlton Plantation", the portion containing thirty acres, and being bounded North by land of Firmin Beadle, East by Bayou Boeuf, South by Mrs. M. J. Coleman, and West by Dr. John Pugh, formerly Mrs. Wafford. Being the same property acquired by Alfred Austin, et al from Mrs. Elizabeth Grundy by act dated March 18, 1886, recorded March 30, 1886, Book W, Page 677, Entry No. 15929 of the Conveyance Records of St. Mary Parish, Louisiana.
It is further ordered, adjudged and decreed that the proceeds of all mineral royalties deposited in the registry of this Court as well as all future royalties accruing under the leases and/or assignments held by British-American Oil Producing Company, Sohio Petroleum Company, Southwest Gas Producing Company, Inc., and Harold T. Farrington shall be distributed among the persons herein adjudicated to be owners thereof in the following manner, to-wit:
Thelma Robertson (Robinson) Collier, an undivided two-ninths predicated upon a royalty payment of one-eighth of all oil, gas and minerals produced.
Gillon N. Robertson (Robinson), an undivided two-ninths predicated upon a royalty payment of one-eighth of all oil, gas and minerals produced.
Wilkerson L. Robertson (Robinson), an undivided four-twenty-sevenths predicated upon a royalty payment of one-eighth of all oil, gas and minerals produced.
Sidney N. Collier, an undivided two-twenty-sevenths predicated upon a royalty payment of one-eighth of all oil, gas and minerals produced.
Mrs. Carrie Cutrera Grizzaffi and Emanuel J. Grizzaffi, jointly, an undivided one-sixth predicated upon a royalty payment of one-fourth of all oil, gas and minerals produced.
Willie Singleton, Alice Singleton Johnson, Martha Singleton Bell, Celestine Singleton Reado, Olivia Singleton Ruffin, Wilson Singleton, Alvin Singleton, Daniel Singleton, Moses Singleton, Rosa (Rosie) Singleton, Hazel Singleton Riley, Marie (Merie) Singleton Knight, Albert Singleton, Eara Singleton Jackson, Bertha Singleton Wilson, Winnie Kirtman Wesley, Lucille Kirtman Zilton, Ella Kirtman Burrell and Louis Kirtman, collectively, an undivided: one-eighth predicated upon a royalty payment of one-eighth of all oil, gas and minerals produced.
Mike Topousis, an undivided one-twenty-fourth predicated upon a royalty payment: *569 of one-eighth of all oil, gas and minerals produced.
It is further ordered, adjudged and decreed that all costs of this litigation shall be paid by Thelma Robertson (Robinson) Collier, Sidney N. Collier, Gillon N. Robertson (Robinson), and Wilkerson L. Robertson (Robinson), which costs shall be deducted from the funds on deposit due said parties cast.
Judgment affirmed.

On Application for Rehearing
PER CURIAM.
In application for rehearing counsel for appellants complaint of error on our part in holding that the party pleading 10 years prescription bears the burden of proving the essential element of good faith which holding counsel submits is expressly contrary to LSA-R.C.C. Article 3481, which provides in effect that in matters of prescription good faith is always presumed and he who alleges bad faith must prove such averment. Appellants further contend our holding in this regard is also contrary to established jurisprudence as announced in Boyet v. Brushwood Methodist Church, La. App., 98 So.2d 593.
We quite agree with esteemed counsel for appellants that as a general rule in matters relating to prescription good faith on the part of the possessor is to be presumed and he who alleges the contrary bears the burden of proof. Article 3481 LSA-R.C.C. Insofar as our original remarks held contrary to the above mentioned codal authority and jurisprudence, we acknowledge them to be in error, the author of this opinion hereby assuming full responsibility for such oversight.
However, we are not herein concerned with a plea of prescription of 10 years acquirendi causa as between litigants dealing with each other as strangers or at arms length but as between litigants who are co-owners of property held by them jointly in indivision. In this regard, in our original opinion we stated:
"The vital element of legal good faith appears lacking in the case at bar considering a co-owner purchasing the interest of a fellow co-owner cannot be held in legal good faith in the absence of a showing that the co-owner's interest thusly purchased was aware of or had notice of such event."
There can be no doubt but that a co-owner has a right to use the property held in common with others for the purpose for which the property is destined and unless his use and occupancy thereof be clearly shown to be adverse and hostile to his joint owners, it will be presumed to be for the joint and common benefit of all. See authorities cited in the original opinion herein.
As further stated in our original opinion, the reason for the rule is that either co-owner may possess the whole property provided such possession be not to the exclusion of his owners in common and any co-owner dissatisfied with such arrangement may seek relief therefrom by way of an action to partition.
In view of the foregoing rules of law, we believe it self-evident that the presumption of good faith provided for under LSA-R.C.C. 3481 is not available to a co-owner whose initial possession of the whole property is presumed to be for the benefit of all co-owners thereof. In this connection we are fortified by the provisions of Article 3481 LSA-R.C.C. which states that when a person's possession commences for another it is supposed (presumed) to continue always under the same title unless there be proof to the contrary.
Rehearing denied.
Judgment affirmed.