CUTRER, Judge.
Plaintiffs seek a declaratory judgment to the effect that they, by virtue of possession by their ancestors in title for 30 years as owners of a certain tract of land in Calca-sieu Parish, should be declared the sole owners and that the defendant,[1] an original co-owner, no longer has any interest in the property. From a judgment dismissing the action, plaintiffs appeal.
The issue in this case is whether sufficient notice of intent to adversely possess the jointly owned property was given to the co-owner. The trial court found under the facts presented that the notice of intent to possess adversely was not sufficient to begin the running of the prescriptive period to acquire the property. We affirm.
The trial court, in its written reasons for judgment, sets out the stipulated facts and the testimony of the witnesses as follows:
“The basic facts from which arises this case of action were stated in a Joint Stipulation of Plaintiff and Defendant. That stipulation reads as follows:
***** *
1.
‘The property involved in this litigation is described as follows, to-wit:
The Northeast Quarter of the Southeast
Quarter (NE/4 of SE/4), the Southwest Quarter of the Southeast Quarter (SW/4 of SE/4), South 30 acres of the Northwest Quarter of the Southeast Quarter (NW/4 of SE/4), Section One (1), Township Nine (9) South, Range Ten (10) West, Louisiana Meridian.
2.
On February 25,1921, Samuel J. Dunham conveyed the entirety of the property in question to Samuel H. Dunham (father of plaintiffs) and Lloyd C. Nixon. The deed also conveyed other property situated in Section Eleven (11), Township Nine (9) South, Range Ten (10) West, but this Section 11 property is not directly involved in this litigation. The consideration for this conveyance was that vendees would assume an outstanding mortgage affecting the property, and that vendees would care for Samuel J. Dunham, his wife, Mary Willie Dunham, and daughter, Bertha, for the remainder of their lives.
Subsequent to the said 1921 conveyance, Lloyd Nixon and his wife resided on the Section Eleven (11) portion of the property with Samuel J. Dunham and his wife. Lloyd C. Nixon left the premises sometime during the summer of 1921, but later returned and was residing on the premises when Samuel J. Dunham died in February, 1922. Lloyd C. Nixon left the premises subsequent to the death of Samuel J. Dun-ham and did not thereafter reside on any part of the property. Lloyd C. Nixon’s wife and daughter, however, did live on the property for a while in 1927 or 1928.
Samuel H. Dunham began residing on the Section 11 portion of the property in the summer of 1922, and continued residing thereon until it was sold in 1942, with the exception of approximately 9 months in 1924 when, in order to get work, the family lived in Richmond, Texas. When he did leave to find work, his family, for the most part, continued to reside on the premises. Samuel H. Dunham and his wife, Mable Claire Dunham, had three children who are your present petitioners.
*1290 3.
Until approximately 1942, the residence was situated upon the Section 11 property, although during the period 1921-1942 the Section 1 property involved in this litigation was partially under fence and limited farming and grazing operations were conducted by Samuel H. Dunham thereon. In the fall of 1945, a residence was constructed upon the Section 1 property. Samuel H. Dunham continued to live on the property until his death on May 25, 1972, and his wife, Mable Claire Walton Dunham, continued to live thereon until just before her death in August, 1977. Plaintiffs have continued to possess the property until this date.
4.
Since the year 1921, Samuel H. Dunham and his family have exercised possession of the property by various methods, including the following, to-wit:
(a) The continual payment of taxes and/or the obtaining of Homestead Exemption;
(b) The construction and maintenance of residences;
(c) The execution and recording of leases;
(d) The execution and recording of a mortgage;
(e) The execution and recording of Acts of Conveyance;
(f) Piling and recording of Succession proceedings pertaining to Samuel H. Dunham and Mable Claire Dunham;
(g) Execution and recording of a pipeline right-of-way and servitude agreement;
(h) The clearing and cultivation of the land;
(i) The cutting of trees and timbers;
(j) Fencing the property;
(k) Raising of cattle and chickens;
(!) The construction and maintenance of barns and chicken coops, and the construction and operation of a sawmill;
(m) Construction and operation of a dairy barn by Claude Christian under an arrangement with Samuel H. Dun-ham;
(n) The construction and maintenance of water wells;
5.
Since the year 1922, Lloyd Nixon has been aware that Samuel H. Dunham and his family have possessed the property. During this period, Lloyd C. Nixon has paid no taxes on the property, nor has he received any remuneration from the property.
6.
Lloyd C. Nixon signed an Act of conveyance to the Section Eleven (11) property in 1948. In 1946, Lloyd Nixon, by his wife, signed a right-of-way referable to the Section One (1) property.’
Lloyd Nixon added to these facts in his testimony:
He is presently living on a piece of property which is part of the Section 11 property, once part of the Dunham estate. He has not lived on the Section 1 property since soon after the death of Samuel J. Dunham. There was a period in the Twenties when he and Samuel H. Dunham, Sr. went looking for work in Wink, Texas, that his children and wife stayed on Section 1 property.
When Nixon first lived on the property, at the time of the sale to him and Samuel H. Dunham, it was for a period of about a year. During that time, he helped care for the ‘old folks’ and paid toward the mortgage on the home place. This was pursuant to the agreement which formed the consideration for the sale of 1921.
In 1947, when he executed the deed of the Section 11 property to the Claypools, he received no money but was under the impression that the funds received from the Claypools was used to pay off the existing mortgage indebtedness on the property.
His wife, Stella Nixon, born Dunham, sister of Samuel H. Dunham, died on April 22, 1965. It was a request of hers that Samuel H. Dunham and his wife never be disturbed in the possession of the Section 1 property. (The stipulation shows that Samuel H. Dunham continued to live on the property until his death on May 25, 1972.) *1291 Some five days after the death of Samuel H. Dunham, a title opinion from Lemuel E. Hawsey, marked ‘D-5’, was dated and received by Nixon. He understood from the letter and from the consultation with the attorney that he did not need to be concerned about taking steps to protect his one-half interest.”
Samuel H. Dunham, Jr. also testified to pertinent facts. He testified as follows:
At the time that the Section 1 property was sold to him in 1945 by his father, a cash consideration of $600.00 was paid. Samuel H. Dunham, Jr. stated that the real reason for the sale, though, was an accommodation for his father in order for the father to avoid creditors which had claims arising out of some unfortunate business venture. In 1948 when the financial problems had worked themselves out, the property was re-conveyed to Mable Claire Dunham (Mrs. Samuel H. Dunham, Sr.).
The mortgage which was taken on the property in 1946 was for the financing of a logging operation to be conducted on the property.
Also testifying were Anna Stevens and Willie Mary De La Houssaye, daughters of Samuel H. Dunham. The testimony of these witnesses was an elaboration of the facts which had been established previously by the stipulations and earlier testimony. Mrs. De La Houssaye did explain the route which the title to this property made from 1945 to 1968. During that time it went from Samuel H. Dunham to Samuel H. Dunham, Sr. — from Samuel H. Dunham, Jr. to Mable Claire Dunham — from Mable Claire Dunham to Arthur J. De La Hous-saye and Willie Mary De La Houssaye — and from Arthur Joseph De La Houssaye and Willie Mary De La Houssaye back to Samuel H. Dunham and Mable Claire Dunham. She stated that all of this series of conveyances was to keep the property in the family. Mrs. De La Houssaye further testified that she did not know that Nixon still considered himself an owner of a one-half interest until a conversation in the summer of 1976, when Nixon told her that he would expect one-half of the purchase price if the property were ever sold.
These facts were essentially uncontro-verted. We now proceed with the application of the law to those circumstances in order to determine whether the plaintiffs became owners of the property by 30 years prescription.
The applicable law of this subject matter was set forth in the case of Givens v. Givens, 273 So.2d 863 (La.App. 2nd Cir. 1973), where the court stated as follows:
“The well-settled jurisprudential general rule is that an owner in indivisión cannot acquire by prescription the rights of his co-owners in the property held in common. Possession by one co-owner is generally considered as being exercised on behalf of all co-owners. Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369 (1950); Hill v. Dees, 188 La. 708, 178 So. 250 (1937); Dew v. Hammett, 150 La. 1094, 91 So. 523 (1922); Simon v. Richard, 42 La.Ann. 842, 8 So. 629 (1890); Litton v. Litton, 36 La.Ann. 348 (1884); British American Oil Producing Company v. Grizzaffi, 135 So.2d 559 (La.App. 1st Cir. 1961); Atlantic Refining Company v. Golson, 127 So.2d 341 (La.App. 2nd Cir. 1961); Demarco v. Duplantis, 88 So.2d 735 (La.App. 1st Cir. 1956).
“It is equally well-settled that an exception to the foregoing general rule is recognized in those instances wherein the adversely possessing co-owner gives notice to the other co-owners that he intends to possess contrary to the common interest. Under such circumstances one owner in common may prescribe against a party owning in indivisión with him provided such possession be clearly hostile and notice be given thereof. Arnold v. Sun Oil Co., supra; Liles v. Pitts, 145 La. 650, 82 So. 735 (1919); Ethredge v. Watts, 137 La. 686, 69 So. 95 (1915); British American Oil Producing Company v. Grizzaffi, supra; Gill v. Robinson, 11 Orleans App. 226 (1914).
“In determining whether a particular case falls within the exception rather than the general rule it has been held that mere occupancy, use, payment of *1292 taxes and similar acts of possession will not suffice to constitute notice of adverse possession to an owner in common. Hodgeson v. McDaniel, 233 La. 180, 96 So.2d 481 (1957); Alba v. Smith, 228 La. 207, 81 So.2d 863 (1955); Lee v. Jones, 224 La. 231, 69 So.2d 26 (1953); British American Oil Producing Company v. Grizzaffi, supra; Banks v. Yarborough, 104 So.2d 283 (La.App. 2nd Cir. 1958).”
The acts of possession of the subject property by Samuel H. Dunham for more than 30 years is undisputed. Such possession alone, however, cannot be the basis for 30-year acquisitive prescription as between co-owners. Givens v. Givens, supra. Before such possession can be the basis for 30-year acquisitive prescription, the possessing co-owner’s (Dunham’s) possession must “be clearly hostile” and notice to the other co-owner (Nixon) must be given thereof. There was nothing in the actions of Samuel H. Dunham that could be considered as hostile possession with notice to Nixon of such.
The plaintiffs contend that the transfer of the property in 1945 from Samuel H. Dunham to his son, Samuel H. Dun-ham, Jr., would serve as notice of hostile possession by Dunham. This position is without merit. The transaction between the father, Samuel H. Dunham, and his son was for the specific purpose of placing the property beyond the reach of creditors. It is undisputed that this transaction had no other purpose. The registry of a new title does not, ipso facto, constitute notice of a co-owner that the possession of his owner in common has become adverse. Southeastern Public Service Company v. Barras, 246 So.2d 298 (La.App. 3rd Cir. 1971); John T. Moore Planting Co. v. Morgan's Louisiana & T. R. & S. S. Co., 126 La. 840, 53 So. 22 (1908). The trial court correctly made further observations in regard to the transactions affecting this property:
“Samuel H. Dunham continued to live on the property which he had sold to his son. In 1946, when a right-of-way was given to the Police Jury of Calcasieu Parish across the property, it was Samuel H. Dunham who signed the right-of-way agreement, and not Samuel H. Dunham, Jr. Also, a signatory on that grant was Lloyd C. Nixon, who signed through his wife.
Later, in 1948, the property was conveyed back to Samuel Dunham’s wife. As mentioned in the recitation of facts, it was later conveyed to the daughter and son-in-law, and then returned to Samuel H. Dunham and wife in 1963.
While the effectiveness of all the filings of Acts of Conveyance as a means to escape one’s creditors is of doubtful value, it is conceded by all that such was the purpose. And whether or not the purpose would be accomplished in the event that the creditors had descended upon Samuel Dunham, it is again presumed that all actions taken by Dunham to preserve the property were done for his benefit and the benefit of his co-owner.”
While we realize that this case presents a troublesome problem, we hold that Dunham never gave notice to Nixon of his adverse ownership so as to constitute an exception to the rule of non-prescriptibility among co-owners. We find that the trial court correctly denied the prescriptive title to the plaintiff.
For the above reasons, the judgment appealed from is affirmed at appellant’s cost.
AFFIRMED.
SWIFT, J., concurs.

. Since judgment by the trial court, the original defendant sold his interest in the property to General Erbon W. Wise, who has been substituted in these proceedings on appeal.